J. S27008/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KEITH CONDE, | : | No. 156 EDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, July 11, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010909-2012

BEFORE: FORD ELLIOTT, P.J.E., STABILE AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JULY 17, 2015**

Appellant appeals his convictions for possessing a controlled substance with intent to deliver, simple possession, and criminal use of communication facility.[1] Finding no error below, we affirm.

On multiple dates in early 2012, police observed appellant make controlled drug buys with a confidential informant in Philadelphia. Appellant used a telephone to facilitate these buys. Appellant was convicted by jury trial on May 3, 2013, and sentenced to an aggregate term of 7 to 15 years' imprisonment on July 11, 2013.

---

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and (a)(16), and 18 Pa.C.S.A. § 7512(a), respectively.

On appeal, appellant argues that the trial court erred in not permitting him to obtain the identity of the confidential informant. Appellant also contends that the evidence was insufficient to sustain his convictions, that his convictions are against the weight of the evidence, and that his sentence was excessive.

We find no error with the trial court's holding. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our determination that there is no merit to the questions raised on appeal. Judge Alice Beck Dubow's comprehensive, 14-page opinion, filed on June 12, 2014, thoroughly discusses and properly disposes of the questions presented. We will adopt it as our own and affirm on that basis.

Additionally, we note that appellant has waived his sentencing issue.

> A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. Two requirements must be met before we will review this challenge on its merits. First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. In order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

***Commonwealth v. Treadway***, 104 A.3d 597, 599 (Pa.Super. 2014), quoting ***Commonwealth v. Bowen***, 55 A.3d 1254, 1262-1263 (Pa.Super. 2012), ***appeal denied***, 64 A.3d 630 (Pa. 2013); ***see also*** Pa.R.A.P., Rule 2119(f), 42 Pa.C.S.A. (requiring concise statement in brief to appeal discretionary aspects of sentence).

Appellant has not included in his brief a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of his sentence. The Commonwealth has specifically objected to appellant's omission of the concise statement. (Commonwealth brief at 22.) "Where an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth objects, the issue is waived for purposes of review." ***Commonwealth v. Montgomery***, 861 A.2d 304, 308 (Pa.Super. 2004). Consequently, appellant has waived this issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2015

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :    CP-51-CR-0010909-2012

              : 

v.                           : 

              :     156 EDA 2014

KEITH CONDE            : 

              : 

              : 

**OPINION**

FILED

JUN 12 2014

Criminal Appeals Unit
First Judicial District of PA

As a result of the Philadelphia Police Department observing the Defendant, Keith Conde, ("Defendant") sell large quantities of heroin to a confidential informant on four different occasions, a jury convicted the Defendant of four counts of Possession with Intent to Deliver a Controlled Substance ("PWID"),[1] four counts of Knowingly and Intentionally Possessing a Controlled Substance by a Person Not Regulated ("K&I"),[2] and one count of Criminal Use of Communication Facility[3] on May 3, 2013 after a three day long trial. On July 11, 2013, the trial court sentenced the Defendant to a total of seven to fifteen years of incarceration. The Defendant appealed.

FACTUAL HISTORY

Police Officer Richard Gramlich, from the Intensive Drug Investigation Squad of the Philadelphia Police Department, was working with a confidential informant ("CI") who was facing his own charges for narcotics and "chose to give us information on his supplier." (N.T.

---

[1] Pursuant to 35 P.S. §780-113(a)(30).
[2] Pursuant to 35 P.S. §780-113(a)(16).
[3] Pursuant to 18 Pa.C.S.A. §7512.

5/1/13 20, 21, 31.) The CI provided Officer Gramlich with a phone number and a description of his heroin dealer. (N.T. 5/1/13 p. 32-33.)

The CI, while the police were present, purchased heroin from the Defendant on numerous occasions. The first transaction occurred on February 3, 2012 at approximately 1:40 P.M. when a plain-clothed Officer Gramlich and Police Officer Thomas Kelley (from the District Attorney's Office Narcotics Unit) met the CI at a confidential location and spoke with the CI about how they wanted the "transaction to go down." (N.T. 5/1/13 p. 36, 49, 60.) Officer Gramlich thoroughly searched the CI to ensure that he had no money or contraband. (N.T. 5/1/13 p. 37, 41) The CI dialed the same phone number that the CI had previously provided to Officer Gramlich, 267-386-6365, and had a "drug-related conversation with the person on the other end of that phone." (N.T. 5/1/13 p. 37, 43-44.) The CI then relayed to Officer Gramlich a specific time and location that the CI and the person on the other end of the phone agreed to meet to deliver heroin to the CI. (N.T. 5/1/13 p. 37.)

Officer Gramlich then gave the CI pre-recorded "buy money" and stayed in an unmarked vehicle while Officer Gramlich observed the CI approach the corner of "Horrocks and Longshore" in Philadelphia, PA. (N.T. 5/1/13 p. 35, 37, 42, 46.) From approximately half a block away, Officer Gramlich observed a 2000 four-door black Lincoln with a Pennsylvania license plate marked HXR-4882 ("Lincoln") occupied by two males, a driver and a front passenger drive up to the CI. (N.T. 5/1/13 p. 38, 49, 123.) The CI entered the rear passenger seat of the vehicle, remained there for a few minutes, and then exited the vehicle. (N.T. 3/18/13 p. 38.) The CI immediately returned to Officer Gramlich.

2

Officer Gramlich thoroughly searched the CI. The CI turned over approximately 65 packets, or 975 milligrams, of a substance that tested positive for heroin. (N.T. 5/1/13 p. 39, 42, 53, 108; N.T. 5/2/13 p.172-173; Exhibit C-4.) Some of the packets were stamped with "WASSAP" in black ink. (N.T. 5/1/13 p. 59.) The CI did not leave Officer Gramlich's sight, except when he was inside the vehicle. (N.T. 5/1/13 p. 50-51.)[4]

The second transaction occurred on February 16, 2012, at approximately 1:20 P.M. (N.T. 5/1/13 p. 61-63; N.T. 5/2/13 p. 180-182.) Officer Gramlich and Detective Joe George met with the CI, who made a phone call to the same phone number. (N.T. 5/1/13 p. 62, 149; N.T. 5/2/13 p. 180-182.) Officer Gramlich thoroughly searched the CI, handed the CI "pre-recorded buy money," and watched the CI walk again to the corner of "Horrocks and Longshore." (N.T. 5/1/13 p. 63; N.T. 5/2/13 p. 180-182.) The same Lincoln pulled up to the corner. (N.T. 5/1/13 p. 63, 123.)

Officer Gramlich and Detective George both observed that it was the Defendant who was driving the car and there was no one else was in the car. (N.T. 5/1/13 p. 69-71; N.T. 5/2/13 p. 180-182.)

The CI entered the vehicle for a few minutes, exited the vehicle, and immediately returned to Officer Gramlich. (N.T. 5/1/13 p. 64.) The CI turned over approximately 63 packets, or 442 milligrams, of a substance that tested positive for heroin. (N.T. 5/1/13 p. 64, 72, 113, N.T. 5/2/13 p. 173, Exhibit C-7) The packets were again stamped with "WASSUP." (N.T. 5/1/13 p. 64.) After the transaction, Officer Gramlich thoroughly searched the CI to ensure that

---

[4] The jury found the Defendant not guilty of the charges related to the February 3, 2012 transaction. The difference between this first transaction and the other four transactions was that for this first transaction, none of the police officers were able to identify the Defendant as a driver or passenger in the Lincoln and there was another person in the Lincoln. For the other four transactions, the police identified the Defendant as the driver of the Lincoln and no one else was in the vehicle.

he did not have additional money or contraband. (N.T. 5/1/13 p. 64-65.) The CI did not leave Officer Gramlich's sight except when he was inside the vehicle. (N.T. 5/1/13 p. 73-74.)

After the transaction, "back-up officers," who were stationed in the area, followed the Lincoln to a shopping center at "G and Hunting Park." (N.T. 5/1/13 p. 64.) Officer Gramlich drove to that location, spotted the Defendant at a phone store, and contacted an unmarked "SWAT officer, Officer Vallejo." (N.T. 5/1/13 p. 65, 71.) Officer Gramlich explained to Officer Vallejo that the Lincoln was involved in an ongoing drug investigation, and asked Officer Vallejo to stop the Lincoln and obtain identification from the driver. (N.T. 5/1/13 p. 65, 71; N.T. 5/2/13 p. 86-88.) Officer Vallejo followed the Lincoln, pulled the car over for not using a turn signal, and obtained identification information from the Defendant. The identification information confirmed that the Defendant's name was Keith Conde. (N.T. 5/1/13 p. 66; N.T. 5/2/13 p. 86-88.)

The third and forth transactions occurred on March 7, 2012, and March 21, 2012 in the late afternoon. Officer Gramlich and Detective George met with the CI, who made a phone call to the same phone number as before. (N.T. 5/1/13 p.76-77, 85, 149.) As a result of the phone calls, the same events occurred on each day. Officer Gramlich thoroughly searched the CI, handed the CI "pre-recorded buy money," and observed as the CI walked to the corner of "Horrocks and Longshore." (N.T. 5/1/13 p. 76-77, 85, 149.) The Lincoln pulled up to the corner. (N.T. 5/1/13 p. 77, 123.) The CI got into the vehicle for a few minutes, exited the vehicle, and returned to Officer Gramlich. (N.T. 5/1/13 p. 79, 85-86.) The CI turned over packets of a substance that tested positive for heroin. (N.T. 5/1/13 p. 80-81, 86, 116-117.) Some of the packets were stamped with "WASSUP" and some were stamped with "HALLADAY." (N.T. 5/1/13 p. 80-81, 86, 116-117.) After the transaction, Officer Gramlich thoroughly searched the

4

CI to ensure that he did not have additional money or contraband. (N.T. 5/1/13 p. 77, 86.) The CI did not leave Officer Gramlich's sight except when he was inside the vehicle. (N.T. 5/1/13 p. 76, 79, 86.)

On March 7, 2012, the CI handed over approximately 63 packets, or 1.235 grams of heroin. (N.T. 5/1/13 p. 80-81, 116; N.T. 5/2/13 p. 174; Exhibit C-11.) On March 21, 2012, the CI handed over approximately 130 packets, or 2.115 grams of heroin (N.T. 5/1/13 p. 86, 117, N.T. p. 174-175, Exhibit C-13.)

Again, Officer Gramlich and Detective George observed that it was the Defendant who was driving the car and no one else was in the car. (N.T. 5/1/13 p. 78-79, 85, 87-88; N.T. 5/2/13 p. 182, 184.)

The fifth and final transaction occurred on April 20, 2013, at approximately 4:00 P.M. Officer Gramlich met with the CI for the fifth time and final time. The CI made a phone call to the same number. (N.T. 5/1/13 p. 90-92, 149.) Once again, Officer Gramlich thoroughly searched the CI, handed the CI money, and observed as the CI walked to the corner of "Horrocks and Longshore." (N.T. 5/1/13 p. 91-92.) The Lincoln pulled up to the corner. (N.T. 5/1/13 p. 92, 94, 101, 123.) Officer Gramlich observed that the Defendant driving the car and no one else was in the car. (N.T. 5/1/13 p. 92.)

The CI then stepped into the vehicle, the Defendant started driving west on Longshore, went around the corner at Souder Street, and then pulled into a driveway while back-up police officers and Officer Gramlich followed the vehicle. (N.T. 5/1/13 p. 92.) The CI exited the vehicle that was stopped in the driveway and returned to Officer Gramlich. (N.T. 5/1/13 p. 95.) The CI turned over approximately 299 packets, or 6.212 grams, of a substance that tested

5

positive for heroin. (N.T. 5/1/13 p. 94, 99, 118; N.T. 5/2/13 p. 175; Exhibit C-17.) The packets were stamped with "WASSUP." (N.T. 5/1/13 p. 99.)

After the transaction, Officer Gramlich thoroughly searched the CI to ensure that he did not have additional money or contraband. (N.T. 5/1/13 p. 101.) The CI did not leave Officer Gramlich's sight except for "five or six seconds" when he was riding inside the vehicle. (N.T. 5/1/13 p. 92, 101.)

At Officer Gramlich's direction, eight to ten back-up police officers blocked the driveway where the Lincoln was parked so that the Defendant could not escape. (N.T. 5/1/13 p. 95.)

The police arrested and searched the Defendant. (N.T. 5/1/13 p. 95; N.T. 5/2/13 p. 104-107.) The officers recovered the following items from the Defendant: a cell phone, $1,950 of the $2,000 pre-recorded "buy money," an additional $275 that was not pre-recorded, and a wallet with identification cards that identified the Defendant as Keith Conde. (N.T. 5/1/13 p. 96-99; N.T. 5/2/13 p. 104-107.)

Officer Gramlich used his own cell phone to call the phone number that the CI had been calling during the entire investigation and the cell phone that was recovered from the Defendant rang. (N.T. 5/1/13 p. 96, 149.)

The $50 bill that was missing from the pre-recorded buy money recovered from the Defendant was never found. (N.T. 5/1/13 p. 121; N.T. 5/2/13 p. 44.)

6

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

The Defendant raises the following issues on appeal:

1. "Whether the trial court erred in denying Petitioner's Motion for the disclosure of the Commonwealth's Informant?"

2. "Whether the Defendant's Constitutional Rights were violated for the failure of the trial court to allow the Defendant to face his accuser (informant)?"

3. "Whether the verdict was based upon insufficient evidence as a matter of law and thus whether a judgment of acquittal should have been awarded?"

4. "Whether the verdict was against the weight of the evidence?"

5. "Whether the sentence was an improper sentence?"

## BASIS FOR TRIAL COURT'S DECISION

### A. The Trial Court Properly Denied the Defendant's Motion to Disclose the Identity of the Confidential Informant and the Defendant's Constitutional Rights Were Not Violated.

The trial court did not abuse its discretion by denying the Defendant's Motion to Disclose Identity of the Confidential Informant. In *Commonwealth v. Marsh*, the Supreme Court of Pennsylvania reiterated that the Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. *Commonwealth v. Marsh*, 606 Pa. 254, 260-261, 997 A.2d 1279 citing *Commonwealth v. Bing*, 551 Pa. 659, 713 A.2d 56, 58 (1998) and *Commonwealth v. Roebuck*, 545 Pa. 471, 681 A.2d 1279, 1283 n. 6 (1996). "In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable...Only after the defendant shows

7

that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth." Pa.R.C.P. §573(B)(2)(a)(i); *Commonwealth v. Marsh* at 261 citing *Roebuck, supra* at 1283; *Bing, supra* at 58; *Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977).

The court should consider the following factors: the crime charged, the possible defenses, the possible significance of the informant's testimony, and any other relevant factors. *Commonwealth v. Marsh* at 262 citing *Commonwealth v. Carter,* 427 Pa. 53, 233, A.2d 284, 287 (1967).

In this case, the Defendant failed to raise <u>any</u> defense to which the identity of the CI would be material and the trial court found that one did not exist.

Since the Defendant did not raise any defense to which the identity of the CI would be material, the trial court did not have to move to the second prong of the inquiry to determine whether the request to disclose the identity of the CI was reasonable. Based on the preliminary hearing transcript and the arguments made during the motion hearing, the trial court was well within its discretion to deny the Defendant's Motion to Disclose Identify of Informant.

The Defendant next asserts that his "constitutional rights were violated for the failure of the trial court to allow [him] to face his accuser (informant)." (Statement of Errors ¶ 2.) As an initial matter, the Defendant waived this objection because it is not specific enough. Pa.R.A.P 1925(b)(4)(vii).

8

Moreover, this claim is without merit. The Confrontation Clause of the Sixth Amendment, applicable to the states through the due process clause of the Fourteenth Amendment, provides that in "all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the <u>witnesses</u> against him." *Idaho v. Wright*, 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990)(citing U.S. Const. amend. VI)(emphasis added).

In general, the Supreme Court has indicated that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that the primary interest protected is the right of cross-examination. *Commonwealth v. Robins*, 571 Pa. 248, 258-59, 812 A.2d 514, 520 (2002) citing *Ohio v. Roberts*, 448 U.S. 56, 64, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (internal citations omitted).

In this case, the Commonwealth neither called the CI as a witness nor introduced his statements into evidence. It was the Philadelphia Police Officers, and not the CI, who were the witnesses who testified against the Defendant. Since the Defendant had a full and fair opportunity to cross-examine each of those police officers, as well as all of the other witness who were called to testify at trial, the Defendant's constitutional rights were not violated when the trial court denied the Defendant's Motion to Disclose the Identity of Informant.

**B. The Commonwealth Presented Sufficient Evidence to Convict the Defendant of All Charges.**

1. <u>Possession with Intent to Deliver</u>

To establish the offense of PWID, the Commonwealth "must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Commonwealth v. Kirkland*, 2003 PA Super 279, 831 A.2d 607, 11 (Pa.Super.Ct. 2003) citing

*Commonwealth v. Conaway*, 791 A.2d 359 (Pa.Super.2002); *Commonwealth v. Aguado*, 760 A.2d 1181 (Pa.Super.2000). The jury may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case, including the "particular method of packaging, the form of the drug, and the behavior of the defendant." *Id.* Further, circumstantial evidence may be used to establish that the defendant actually possessed the drugs or contraband. *Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134-35 (1983) citing *Commonwealth v. Bentley*, 276 Pa.Super. 41, 46, 419 A.2d 85, 87 (1980).

In this case, there is no question that the jury heard sufficient evidence to convict the Defendant of PWID. On four separate occasions Officer Gramlich and Detective Geroge observed that it was the Defendant who was driving a Lincoln to the corner of "Horrocks and Longshore" with no one else in the car. (N.T. 5/1/13 p.60-97., N.T. 5/2/13 p. 179-187.)

The officers also observed the CI enter the Lincoln with pre-recorded buy money, and observed the CI exit the vehicle with large quantities of heroin. (N.T. 5/1/13 p.60-97., N.T. 5/2/13 p. 179-187.) Each time, the CI was thoroughly searched before and after the transaction to ensure that he did not have any money or contraband on him to compromise the investigation. (N.T. 5/1/13 p.60-97; N.T. 5/2/13 p. 179-187.) While the police officers did not actually physically observe the exchange of money for drugs, their combined observations on four separate occasions provide more than enough circumstantial evidence for the jury to infer that the CI gave money to the Defendant in order to purchase a large quantity of heroin – a controlled substance – from the Defendant. 35 P.S. §780-102(b), 35 P.S. §780-104(1)(ii)(10).

2. Knowingly and Intentionally Possessing a Controlled Substance

To establish the offense of knowingly and intentionally possessing a controlled substance, the Commonwealth must prove that the Defendant "knowingly or intentionally possess[ed] a controlled or counterfeit substance." 35 P.S. §780-113(16). As previously discussed, circumstantial evidence may be used to establish that the defendant actually possessed the drugs or contraband. *Commonwealth v. Macolino*, supra.

In this case, the jury heard evidence that on four separate occasions Officer Gramlich searched the CI, provided the CI with pre-recorded buy money, sent the CI to the Lincoln that was solely occupied by the Defendant, observed the CI during the entire transaction, searched the CI upon return, and recovered large quantities of bundled heroin from the CI. (N.T. 5/1/13 p.60-97; N.T. 5/2/13 p. 179-187.)

The jury most certainly had sufficient facts on which to infer that the CI obtained the heroin – a controlled substance – from the Defendant and that the Defendant intentionally possessed that heroin. 35 P.S. §780-102(b), 35 P.S. §780-104(1)(ii)(10).

3. Criminal Use of a Communication Facility

To sustain a conviction for Criminal Use of a Communication Facility, the Commonwealth must prove beyond a reasonable doubt that: (1) Appellants knowingly and intentionally used a communication facility; (2) Appellants knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred. *Commonwealth v. Moss*, 2004 PA Super 224, 852 A.2d 374, 382 (Pa. Super. Ct. 2004). Facilitation has been defined as "any use of a communication facility that makes easier the

11

commission of the underlying felony." *Moss* at 382 quoting *United States v. Davis*, 929 F.2d 554, 559 (10th Cir.1991).

The jury heard evidence that on four different occasions, the CI called the Defendant, set up a meeting with the Defendant, and exchanged pre-recorded buy money for large quantities of heroin during that meeting. (N.T. 5/1/13 p.60-97; N.T. 5/2/13 p. 179-187.) Further, when the Defendant was arrested on April 20, 2012 after the fifth transaction, Officer Gramlich confirmed that the telephone recovered from the Defendant was assigned the same phone number the CI had been calling to set up each transaction. (N.T. 5/1/13 p. 96.) This was sufficient evidence to prove that the Defendant's telephone was used to facilitate PWID, a felony, and therefore convict the Defendant of Criminal Use of a Communication Facility.

## C. The Verdict Was Not Against the Weight of the Evidence

When reviewing a challenge to the weight of the evidence, the verdict may be reversed only if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621, 630 (1995). For the reasons stated above, the jury had sufficient evidence to convict the Defendant of four counts of PWID, four counts of K&I, and one count of Criminal Use of Communication Facility.

Additionally, the court is not troubled that the jury found the Defendant not guilty of the charges resulting from the first transaction and guilty of the charges resulting from the four subsequent transactions. The difference between this first transaction and the other four transactions was that for this first transaction, none of the police officers were able to identify the Defendant as a driver or passenger in the Lincoln and there was another person in the Lincoln.

12

For the other four transactions, the police identified the Defendant as the driver of the Lincoln and no one else was in the vehicle.

The verdicts were not against the weight of the evidence, nor were they shocking, and should not be overturned.

### D. The Sentence Was Legal and Reasonable

The Superior Court has found that "sentencing is a matter within the sound discretion of the sentencing judge and a sentence will not be disturbed by an appellate court absent manifest abuse. A sentence must either exceed the statutory limits or be manifestly excessive to constitute an abuse of discretion." *Commonwealth v. Fries*, 362 Pa. Super. 163, 167, 523 A.2d. 1134, 1135 (1987), *appeal denied*, 515 Pa. 619, 531 A.2d. 427 (1987) citing *Commonwealth v. White*, 341 Pa. Super. 261, 491 A.2d. 252 (1985).

Here, in fashioning an appropriate sentence, the Court considered the evidence presented during trial, the arguments made by counsel, the Modified Presentence Report, the jury's verdict, the Defendant's prior arrests and convictions, the gravity of these offenses, the threat to the community, and the Defendant's rehabilitative needs (N.T. 7/11/12 p. 6-9, 12-15, 21-22). Further, the court was bound by applicable mandatory minimums. 18 Pa.C.S.A. §7508(c).

Both parties agreed that the Defendant faced a mandatory minimum of five years of incarceration due to his prior convictions and the amount of heroin involved in the April 20, 2012 transaction. (N.T. 7/11/13 p. 6-7.) The maximum sentence allotted by statute was fifteen years. 35 P.S. §780-113(f)(1). The trial court sentenced the Defendant to a sentence of seven to fifteen years of incarceration for the April 20, 2012 PWID conviction, with sentences for the remaining convictions running concurrently. (N.T. 7/11/13 p. 21-22.) The trial court's sentence

did not exceed statutory limits, was not manifestly excessive, and was not an abuse of discretion.

The sentence was legal and reasonable and should be upheld.

## CONCLUSION

Based on the foregoing, the Superior Court should affirm the judgment of sentence.

BY THE COURT:

DATED: 6/12/14

ALICE BECK DUBOW, JUDGE