681 A.2d 1279

COMMONWEALTH of Pennsylvania, Appellee,

v.

Nathaniel ROEBUCK, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 16, 1995.

Decided July 31, 1996.

Alisa N. Carr, Pittsburgh, for N. Roebuck.

Kemal A. Mericli, Elizabeth Brown, Pittsburgh, for Com.

Before NIX, C.J., amd FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## *OPINION*

CAPPY, Justice.

This Court granted allocatur in order to review the burdens of proof and the proper procedures in applying the *Carter–Roviaro* test[1] to criminal prosecutions where a confidential informant is an eyewitness to the crime and the defendant seeks the disclosure of the informant's identity for purposes of preparing a defense at trial.

Appellant, Nathaniel Roebuck, was charged with two counts each of Possession of a Controlled Substance, 35 P.S. § 780–113 (a) (16), Possession with Intent to Deliver, 35 P.S. § 780–113 (a) (30), Delivery of a Controlled Substance, 35 P.S. § 780–113 (a) (30), and Criminal Conspiracy, 18 Pa.C.S.A. § 903 in connection with two drug sales involving the use of a confidential police informant who was also an eyewitness to the transactions. The jury convicted Appellant of all the charges. Appellant took an appeal to the Superior Court. The Superior Court affirmed. For the reasons which follow, we vacate in part and affirm in part the order of the Superior Court.

A review of the record reveals the following. On December 21, 1990, at or about 2:00 p.m., Detective Renee Kacsuta of the Pittsburgh Police Department met with a confidential informant for the purpose of making an undercover buy of narcotics. The informant drove Kacsuta to Mt. Pleasant Street in

1. *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967); *Roviaro v. U.S.,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

the Northview Heights section of Pittsburgh. According to Kacsuta, the seller, whom she later identified as the Appellant,[2] approached the informant's vehicle and leaned down toward the car window. Kacsuta testified that she leaned forward and greeted the seller. Thereafter the seller discussed with the informant a sale of a "bundle" of heroin. After quoting a price of $180, the seller walked up the street approximately fifty feet, where he met with an individual later identified as Keith Lee.[3] Lee handed something to the seller, whereupon, the seller returned to the vehicle and handed to Kacsuta a plastic baggie containing fifteen balloons filled with heroin. In return, Kacsuta paid the seller the agreed price of $180. This entire episode lasted approximately fifteen minutes, during which Kacsuta was able to observe the seller's appearance.

Immediately following the drug transaction, according to Detective Kacsuta, the informant told Kacsuta that the seller was Nathaniel Roebuck. Upon returning to police headquarters, Kacsuta entered the name of "Nathaniel Roebuck" into the BCI computer and received a description which matched that of the man whom she had observed during the drug transaction. Kacsuta also removed a photograph of Nathaniel Roebuck from the police identification office, and this she also identified as a photograph of the man from whom she and the informant had purchased the heroin.

Subsequently, on January 23, 1991, Detective Kacsuta returned to Mt. Pleasant Street, together with the informant, for the purpose of making another purchase of heroin from the seller. On this occasion, Kacsuta was driving her own vehicle and the informant was riding as a passenger. Upon their arrival at Mt. Pleasant Street, the seller approached the driver's side of the vehicle and asked Kacsuta what she wanted. When Kacsuta told the seller she wanted a "bundle," he replied that the price had gone up to $190. When Kacsuta

2. Apparently, Detective Kacsuta had never met Appellant prior to December 21, 1990.

3. Keith Lee was also charged in connection with his role in this transaction. He was tried separately.

responded affirmatively, the seller conferred with a man who was later identified as Albert Austin.[4] Austin then entered two separate apartment buildings, and, upon emerging from the second building, approached Kacsuta's vehicle and handed her a bundle of fifteen balloons which were filled with heroin. Kacsuta, in return gave Austin $190.

A criminal complaint was filed against Appellant on April 17, 1991, and he was arrested the following day. Appellant filed a pretrial discovery motion seeking disclosure of the confidential informant who had participated in the two undercover drug transactions which had led to his arrest. Appellant alleged that his defense at trial would be mistaken identification and expressed the belief that the informant's testimony might be helpful. At a pre-trial hearing on this motion, Appellant testified that, on the day prior to his arrest on the instant drug charges, he had been picked up by police and questioned regarding an unrelated shooting incident because he had been misidentified by the victim of that shooting. Appellant also related an additional incident in which an acquaintance of his, Ivy Edwards, had observed in a police station a "wanted" poster which had Appellant's picture on it, but which contained the name and description of another individual. Following the pre-trial hearing, the Court denied Appellant's motion for disclosure of the identity of the informant.

At trial, Appellant testified that he had not been present at either drug transaction and denied that he had ever met Detective Kacsuta. He also testified regarding the prior misidentification of him in the unrelated shooting incident; and Ivy Edwards testified as to having observed the mislabeled photograph of Appellant at a police station. Appellant also called Albert Austin as a witness, and he admitted his participation in the transaction of January 23, 1991, but denied that the other man had been Appellant. After hearing all the testimony, the jury rejected Appellant's defense of misidentification and found him guilty of all charges.

4. Albert Austin was also charged for his role in this transaction. In a separate proceeding, he pleaded guilty to the charges.

## PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 305(B)(2)

■ The parties present this case as being governed by Pa.R.Crim.P. 305(B)(2)(a), pertaining to pretrial discovery,[5] which provides in pertinent part:

(2) *Discretionary With the Court.* In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense and that the request is reasonable:

(a) the names and addresses of all eyewitnesses[.]

Thus, as the above quoted rule implies, an appellate court's standard of review is to determine whether the Court of Common Pleas abused its discretion in denying a defendant's request for discovery. *See, e.g., Commonwealth v. Jones,* 432 Pa.Super. 97, 103, 637 A.2d 1001, 1004 (1994).

Appellant essentially argues that he met his burden to show that the identity of the confidential informant is material to the preparation of his defense and that his request is reasonable. Appellant further argues that he has shown that his need for the identity of the confidential informant in order to assure a fair trial outweighed any privilege by the Commonwealth to maintain the confidentiality of the informant.

The Commonwealth, on the other hand, argues that Appellant did not meet his burden to show that the identity of the confidential informant was material to Appellant's defense or that the request was reasonable. In addition, the Commonwealth argues that the trial court properly weighed Appel-

5. Both Appellant and the Commonwealth agree that Pa.R.Crim.P. 305(B)(2)(a) is the relevant provision. *See* Appellant's Brief to this Court at 10–11; Commonwealth's Brief to this Court at 10–11. The Superior Court below agreed. *Commonwealth v. Roebuck,* No. 1149 PGH 1993, slip op. at 5-6, 440 Pa.Super. 635, 654 A.2d 602. (Pa.Super. September 28, 1994). As the parties do not raise any other provision of the rules governing discovery, we neither consider nor decide whether other provisions would apply.

lant's alleged need for the confidential informant's identity against the Commonwealth's qualified privilege to preserve the informant's confidentiality in order to protect the flow of information from informants and thereby maintain the public's interest in effective law enforcement.[6] The Commonwealth argues that the trial court did not abuse its discretion in finding that the Appellant had failed to show that his need for information outweighed the Commonwealth's privilege.

We note that pursuant to Pa.R.Crim.P. 305(B) there is a threshold requirement that Appellant make some showing that the information sought is "material" to the preparation of the defense and that the request is reasonable. Herein Appellant alleged that he was misidentified by Detective Kacsuta and he denied any participation in the events. He sought the identity of the confidential informant so as to corroborate his testimony. In support of his theory of misidentification, he offered testimony at the pretrial hearing that on the day he was arrested for the present charges he had been misidentified to the police by a person who accused Appellant of shooting him. As additional support for his defense of misidentification, Appellant offered testimony that the local police station had posted a picture of Appellant which had attached to it someone else's name and a physical description which did not match that of Appellant.

In *Commonwealth v. Payne*, 540 Pa. 54, 60, 656 A.2d 77, 80, (1994) a case very similar to the present case, we observed that:

[t]he instant record reveals that Appellant testified at the evidentiary hearing that he had not met the trooper prior to

6. In *Commonwealth v. Carter*, 427 Pa. at 56, n. 3, 233 A.2d at 285, n. 3 (1967), we stated that "neither statute nor appellate decision in Pennsylvania has yet recognized such a privilege" to refrain from disclosing the identity of confidential informers in criminal trials. Now however, there are appellate cases which clearly recognize and/or apply the privilege in this jurisdiction. *See, e.g., Commonwealth v. Payne*, 540 Pa. 54, 656 A.2d 77 (1994); *Commonwealth v. Washington*, 463 Pa. 206, 344 A.2d 496 (1975); *Commonwealth v. Delligatti*, 371 Pa.Super. 315, 538 A.2d 34 (1988), *alloc. den.*, 520 Pa. 595, 552 A.2d 250 (1988); *Commonwealth v. Speaks*, 351 Pa.Super. 149, 505 A.2d 310 (1986); *Commonwealth v. Bonasorte*, 337 Pa.Super. 332, 486 A.2d 1361 (1984).

his arrest and that he had not been at the apartment complex where the [drug] transaction occurred on the night in question. What is that if not "evidence that suggests that he was not at the scene?" . . . . This is precisely the kind of showing which we indicated in *Carter* would suffice to require disclosure. Where the defense is one of mistaken identity, the defendant can do no more than deny his involvement and suggest that another eyewitness might offer evidence that would support this claim.

In *Payne*, we went on to hold that the defendant's conviction had to be vacated. Furthermore, "the defendant cannot be expected to predict exactly what the informant would say on the stand. Rather, in keeping with *Roviaro* and *Carter*, 'all the defendant must show is a reasonable **possibility** that the anonymous informer **could** give evidence that would exonerate him.'" *Commonwealth v. Pritchett*, 225 Pa.Super. 401, 408, 312 A.2d 434, 438 (1973)(emphasis added). In light of the foregoing, Appellant has clearly provided evidence which suggests that he was not at the scene and that there was a reasonable possibility that the confidential informer could give evidence that would exonerate him. Accordingly, we conclude that Appellant has clearly made a showing that the information sought was indeed material. Furthermore, in light of the nature of the defense, *i.e.*, misidentification by Detective Kacsuta, the request for the identity of the confidential informant was reasonable.

Only after a showing by the defendant that the information sought is material and the request reasonable is the trial court called upon to exercise its discretion to determine whether the information is to be revealed. *Commonwealth v. Bonasorte*, 337 Pa.Super. at 355, 486 A.2d at 1374. In *Commonwealth v. Carter, supra*, this Court announced standards which should guide the trial courts in the exercise of their discretion in cases where the defendant requests the identity of a confidential informant who is also an eyewitness and, in response, the Commonwealth asserts its qualified privilege to maintain the confidentiality of the informant. In *Carter*, we adopted the

guidelines which the United States Supreme Court announced in *Roviaro v. U.S., supra:*

> [w]e believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders the nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.

*Carter,* 427 Pa. at 59, 233 A.2d at 287 (quoting *Roviaro,* 353 U.S. at 60–62, 77 S.Ct. at 628–29).

## THE DECEMBER 21, 1990 CHARGES

■ Applying the foregoing standards to the charges of December 21, 1990, we are constrained to conclude that the trial court abused its discretion in denying Appellant's request for the identity of the confidential informant. The confidential informer was the only eyewitness to the entire transaction other than Detective Kacsuta.[7] Thus, the possible significance of the confidential informant's testimony cannot be underestimated in this case. This clearly weighs in favor of disclosure. *Payne, supra, Commonwealth v. Lloyd,* 427 Pa. 261, 234 A.2d 423 (1967), *Carter supra,* and *Commonwealth v. Lee,* 254 Pa.Super. 495, 386 A.2d 59 (1978). Moreover, the fact that the only eyewitness to the entire transaction other than the confidential informant was a police officer militates in favor of

7. Contrary to the Commonwealth's assertion that Keith Lee was an eyewitness, the record is devoid of any evidence that he saw or heard the initial encounter between Detective Kacsuta and the seller of the drugs when they exchanged greetings and when the informant and the seller negotiated the price. The record also establishes that at the time the seller actually handed the drugs to Detective Kacsuta and she paid him, Keith Lee, if he was still present, was at least 50 feet away from the spot where the exchange occurred. Moreover, at the time of Appellant's trial, Lee was under indictment for participation in this December 21st incident and Appellant reasonably asserts that Fifth Amendment concerns may have precluded Lee's availability as a witness at Appellant's trial.

disclosure. In *Carter*, 427 Pa. at 61, 233 A.2d at 288, we noted that:

> [e]lemental to our concept of fairness, as well as that embodied in the federal constitution, is the awareness that the testimonial perspective of police officers is conditioned by the "often competitive enterprise of ferreting out crime." [citations omitted] This awareness make us reluctant to permit the establishment of facts crucial to criminal guilt solely by police testimony based on a single observation *where testimony from a more disinterested source is available.*[8]

*Accord Payne, supra,* and *Lloyd, supra.*

On the other side of the equation, a court should weigh, *inter alia,* the public's interest in maintaining the flow of information to the police and the safety of the confidential informant. We note in this regard that there was no evidence whatsoever presented that disclosure would jeopardize the safety of the confidential informant or compromise any ongoing investigation. Accordingly, in light of the foregoing considerations which weigh in favor of disclosure and the fact that there has been no showing by the Commonwealth of any countervailing considerations,[9] the trial court clearly abused

8. In this case there were two observations of the seller made by Detective Kacsuta and, thus, this case differs from *Carter* in this regard. Arguably this weighs in favor of maintaining the privilege. However, this distinction is not legally determinative. *See Commonwealth v. Lee,* 254 Pa.Super. at 500, 386 A.2d at 61 (1978)(holding that the appellant therein showed a need for the information which outweighed the privilege. The court held this despite the fact that police observed the seller on three separate occasions within the span of 24 hours. On each occasion the informant was also an eyewitness. The Court found of particular significance the fact that the informant was the only "civilian" witness who actively participated in and witnessed the alleged drug transaction, and that the appellant therein produced alibi witnesses at trial.)

9. The Commonwealth argues that it did not need to provide any evidence that disclosure would impair the flow of information or jeopardize ongoing investigations or endanger the informant because Appellant failed to meet his threshold burden of demonstrating that the informant's identity would materially aid his defense. We have found that Appellant did indeed meet this threshold and, thus, there was a need for the Commonwealth to present the required evidence.

its discretion in failing to compel disclosure of the confidential informant's identity. Accordingly, we vacate the judgement of sentence arising out of the December 21, 1990 charges and remand for further proceedings consistent with this opinion.

## THE JANUARY 23, 1991 CHARGES

■ At the pre-trial evidentiary hearing, the trial court orally denied Appellant's motion to produce the identity of the confidential informant. Implicit in this ruling is the judgement that Appellant failed to prove that his need for the confidential informant's identity outweighed the Commonwealth's privilege. We agree insofar as this conclusion relates to the January 23, 1991 charges and, thus, we cannot conclude that the trial court abused its discretion in finding that Appellant failed to prove that his need outweighed the Commonwealth's privilege. The trial court stated, "I do not think that . . . the Defense [i.e., Appellant] has made a showing that the CI was in a position to have information which is critical to the defense such as to warrant the production of the CI." N.T. at p. 53 (May 28, 1992). We understand this to be a determination that in light of the fact that Albert Austin had made himself available to Appellant in order to testify that Appellant was not present at the January 23, 1991 drug sale,[10] which

10. While Albert Austin did not testify at the preliminary hearing, it is clear that the judge knew of the existence of such a witness and the nature of that witness' testimony. In the course of a discussion between defense counsel, Ms. Middleman, and the court, where defense counsel was explaining what further witnesses she was going to present at the pretrial hearing, the court inquired if one of the witnesses to be presented at the pre-trial hearing was going to testify that Appellant was not present at the drug transactions:

THE COURT: The guy [i.e. the witness] is going to say he [Appellant] is not the guy [who sold the drugs]?

MS. MIDDLEMAN: Well, I think I might save that for trial, Your Honor.

THE COURT: Okay.

N.T. at p. 30 (May 28, 1992). Moreover, the prosecution argued at the pre-trial evidentiary hearing that the availability of Albert Austin must be considered in the balancing test of Carter–Roviaro. The prosecution argued:

Thirdly, it appears on the record, I believe the Defense has available other witnesses to call for purposes of presenting whatever misidentification theory they have, that being both Keith Lee and, I

corroborated Appellant's own testimony, Appellant failed to show that he **needed** the testimony of the confidential informant. *U.S. v. Simonetti,* 326 F.2d 614, 615 (2d Cir.1964)(no abuse of trial court's discretion in denying disclosure where "the testimony of the Special Employee [i.e., the confidential informant] would have been at best cumulative."); *Suarez v. U.S.,* 582 F.2d 1007, 1012 (5th Cir.1978)(no error in denying disclosure where the informant's testimony in *Suarez* was not essential to the appellant's defense as was the case in *Roviaro* because the confidential informant therein represented the only likely source of exculpatory information.) *Cf. Commonwealth v. Christy,* 540 Pa. 192, 656 A.2d 877 (1995)(arguably erroneous exclusion of some evidence was harmless because other similar evidence was admitted and thus no prejudice); *Henery v. Shadle,* 443 Pa.Super. 331, 661 A.2d 439 (1995)(erroneous exclusion of evidence harmless where similar evidence was admitted).

Our conclusion that the trial court did not abuse its discretion in deciding that Appellant failed to prove his need for the information outweighed the Commonwealth's privilege is bolstered by the actual testimony of Albert Austin at Appellant's trial. Appellant essentially alleged that the testimony of the confidential informant would have corroborated his theory that Detective Kacsuta mistakenly identified Appellant as the seller. At trial, Appellant testified, and denied being present at the transaction or having ever met Detective Kacsuta. Albert Austin, who admittedly was present at, and involved in the transaction on January 23, and subsequently pleaded guilty to possession, delivery and conspiracy based on his participation therein, testified at Appellant's trial that Appellant was not present or involved in any way with that transaction. At best, the confidential informant's testimony would have merely duplicated Albert Austin's testimony. In light of the fact that

> believe, Howard [sic] Austin, who is present in the bullpen for that purpose.
> Caselaw [sic] also indicates that the availability of other witnesses is to be considered in a weighing and balancing test, that if the other witnesses are available, the privilege can remain intact while the Defendant still presents his defense and has a fair trial.

N.T. at p. 50 (May 28, 1992).

this testimony would have at best been cumulative of Albert Austin's testimony, the trial court's exercise of discretion in denying Appellant the information as it relates to the January 23, 1991 charges was vindicated.

Accordingly, we affirm the judgement of sentence arising out of the January 23, 1991 charges.

The order of the Superior Court is thus vacated in part and affirmed in part.

NEWMAN, J., files a concurring opinion in which NIX, C.J., joins.

CASTILLE, J., files a concurring and dissenting opinion.

NEWMAN, Justice, concurring.

I am constrained to agree with the majority in this case. I write separately to emphasize that the majority's holding should be strictly limited to situations, such as the present case, where a defendant demonstrates that the informant's identity would materially aid in his or her defense, and where the Commonwealth presents no evidence at all to prove that disclosure of the informant's identity would jeopardize his or her safety or compromise ongoing investigations. If any of these countervailing considerations are present, they weigh heavily against requiring the Commonwealth to disclose the confidential informant's identity.

CASTILLE, Justice, concurring and dissenting.

I agree with the majority's affirmance of appellant's judgment of sentence arising out of the January 23, 1991 charges. However, I disagree with the majority's conclusion that the confidential informant's identity must be disclosed regarding the December 21, 1990 incident. Therefore, I dissent.

As I stated in my concurring opinion in *Commonwealth v. Payne*, 540 Pa. 54, 656 A.2d 77 (1994), the safety of the confidential informant is a controlling factor in determining whether to reveal his or her identity. Before an informant's identity should be disclosed, however, the defendant must lay

an evidentiary basis or foundation that the confidential informant possesses relevant information that will *materially aid* the defendant in presenting his or her defense and that the information is not obtainable from another source. *See Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977); *see also, Commonwealth v. Bradshaw,* 238 Pa.Super. 22, 29, 364 A.2d 702, 706 (1975); *Commonwealth v. Pritchett,* 225 Pa.Super. 401, 407, 312 A.2d 434, 438 (1973). Bare or bald assertions that the witness will aid in the defense are not sufficient. *Herron,* 475 Pa. 461, 466, 380 A.2d 1228, 1230 (1977) ("more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense"). Although the defendant cannot be expected to predict exactly what the witness would say, he or she must demonstrate that there is a reasonable likelihood that the witness will exonerate the defendant and that the evidence is not obtainable from another source. *See Commonwealth v. Knox,* 273 Pa.Super. 563, 568, 417 A.2d 1192, 1194 (1980); *see also, Pritchett,* 225 Pa.Super. 401, 408, 312 A.2d 434, 438 (1973).

In the instant case, appellant failed at the pre-trial hearing and fails in his brief to this Court to demonstrate that the confidential informant would offer material evidence that would exonerate him from the crimes charged. Appellant provides absolutely nothing to support his assertion that the informant would provide testimony in support of appellant's misidentification defense.

Nonetheless, the majority speculates that the "possible significance" of the informant's unknown testimony cannot be underestimated because, other than Detective Kacsuta, the confidential informant was the only eyewitness to the transactions. The majority, however, ignores the record which demonstrates that appellant and Detective Kacsuta were not the only witnesses to the crimes. In fact, Keith Lee witnessed and participated in the first transaction and thereby would have been in a position to confirm or dispel appellant's participation. Indeed, appellant himself concedes that Lee was

present at the first transaction. (Brief for Appellant, p. 5, n. 2).

However, appellant asserts in his brief that Lee could not be called as a witness because of "potential Fifth Amendment considerations." [1] Notwithstanding this allegation, appellant offers only speculation at this point that Lee would have been unavailable due to Fifth Amendment considerations. Appellant did not call this witness to testify so that Lee could even assert his Fifth Amendment rights, assuming he had such rights to assert, or request that the trial court determine that the witness was entitled to invoke the privilege so as to demonstrate the merits of his claim. *See Commonwealth v. Carrera*, 424 Pa. 551, 553–54, 227 A.2d 627, 629 (1967) (a witness who invokes his right against self-incrimination is unavailable only where the trial court determines that the witness' silence is justified); *Commonwealth v. Hawthorne*, 428 Pa. 260, 263, 236 A.2d 519, 521 (1968) (it is always for the court to determine if a witness' silence is justified). Under these circumstances, I would not require the safety and confidentiality of the informant to be compromised where appellant has failed to take the necessary steps to procure the other witness to the alleged transaction.[2]

The majority also overlooks the fact that Detective Kacsuta observed appellant for a significant amount of time and at a close distance during the first transaction. Within one hour of that transaction, the detective entered appellant's name into the BCI computer and obtained a description and photograph of appellant which the detective concluded matched the person from whom she had just purchased heroin. Indeed, when

1. This position is curious at best especially in light of the fact that appellant made this same claim with respect to Albert Austin yet he proceeded to call Austin as a defense witness to testify at trial in connection with the second transaction.

2. The incredulous nature of appellant's defense is evident from the evidence he presented regarding the second transaction. With respect to the second transaction, appellant called Austin to testify that he was not the person selling drugs, appellant himself testified that he was not the seller, and the testimony of Ivy Edwards was offered to establish that his police photograph was misnamed. Notwithstanding all of this evidence, the jury found Detective Kacsuta's testimony more credible.

questioned about the second transaction, the detective testified that she immediately recognized appellant as being the same person from whom she purchased heroin the month before and the same person in the BCI photograph.

The majority opinion appears to adopt as an axiom that *at trial* where the only eyewitness to the entire transaction other than the confidential informant was a police officer then that fact alone militates in favor of disclosure of the informant's identity. This unfortunate conclusion places yet another insurmountable obstacle in the path of effective law enforcement to combat the scourge of drugs in Pennsylvania's beleaguered communities. By this decision, the majority effectively eliminates the use of confidential informants to make drug buys by a police officer acting in tandem with a confidential informant. The majority may blithely ignore the violence and mayhem surrounding the drug trafficking in our communities, but those who wish to aid the police in their enforcement efforts will now do so only at their own peril. Few confidential informants will place themselves at risk of deadly retaliation as a result of this decision.

Unfortunately, this case represents a long, nearly unbroken string of decisions from this Court that effectively shield criminal defendants from responsibility for their crimes on the theory that there exists a greater right to privacy for criminal suspects in Pennsylvania than in other jurisdictions through this Court's strained interpretation of Article I, § 8 of the Pennsylvania Constitution. See e.g., *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996) (where police officers approach and pursue persons who inexplicably flee on their own initiative upon the arrival of police in their area and then discard evidence or contraband, such conduct will result in suppression of the discarded items even though police did not arrest them, they did not halt to police authority, and police did not in any manner intrude upon their path of departure from the area); *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995) (where police *could* obtain a warrant prior to searching a vehicle, evidence seized in the absence of a search warrant must be suppressed notwithstanding that officers

observed a marijuana cigarette in the vehicle and notwithstanding that police had probable cause to believe drugs and/or drug paraphernalia were contained therein); *Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752 (1995) (evidence must be suppressed even though veteran police officer observes what he believes to be a drug transaction in a high crime area and sees suspect flee after transaction); *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994) (Pennsylvania citizens have a heightened expectation of privacy in their homes; therefore, Article I, Section 8 of the Pennsylvania Constitution permits one-party consensual taping of oral communications occurring within one's home only if there has been a prior determination of probable cause by a neutral, judicial authority); *Commonwealth v. Payne,* 540 Pa. 54, 656 A.2d 77 (1994) (police must disclose identity of confidential informant, notwithstanding that defendant fails to demonstrate that the informant possesses relevant information that will materially aid defendant's defense). And now the instant case.

Therefore, I dissent from the majority opinion insofar as it compels disclosure of the confidential informant, given that appellant could have called another eyewitness and failed to do so.