J-S41001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BILLY GIBSON, | |
| Appellant | No. 2402 EDA 2015 |

Appeal from the Judgment of Sentence Entered July 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008036-2013

BEFORE:  BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED July 1, 2016**

Appellant, Billy Gibson, appeals from the judgment of sentence of an aggregate term of 56 to 120 months' incarceration, followed by 60 months' probation, imposed after he was convicted, following a non-jury trial, of possession of a controlled substance, possession with the intent to deliver a controlled substance (PWID), and various violations of the Uniform Firearms Act, 18 Pa.C.S. §§ 6101-6127.  After careful review, we affirm.

Appellant was arrested and charged with the above-stated offenses after officers, acting on a tip from a known, confidential informant (CI), conducted a ***Terry***[1] pat-down of Appellant and discovered a gun and drugs

_____

[*] Former Justice specially assigned to the Superior Court.
[1] ***Terry v. Ohio***, 392 U.S. 1, 27 (1968) (granting authority to police officers to pat-down or frisk an individual for weapons where officers have a
*(Footnote Continued Next Page)*

on his person. A subsequent search of Appellant's vehicle revealed more narcotics.

Prior to Appellant's non-jury trial, he filed omnibus pre-trial motions, including a motion to suppress evidence and a motion to compel the Commonwealth to disclose the identity of the CI. The court conducted a hearing on March 11, 2015. The court summarized the evidence presented at that proceeding as follows:

> At the [m]otion [hearing], the Commonwealth first called Detective Falcone who testified that, on April 14, 2013, a little after midnight, he received a phone call from a confidential informant (CI) from whom he had received plenty of credible information resulting in arrests and convictions over the 2½ years that the Detective had known him.[2] The informant told the Detective that there was a person inside of Spiro's Lounge wearing a "black hat, green Polo shirt and blue jeans who had recently pulled up in a white Crown Victoria bearing PA tag HXY-1059," and that person was armed with a handgun.[3] Instantly, Detective Falcone called both Sergeant Zerweck and Police Officer McAllister and relayed this information to them.[4]

---

[2] At the time of defendant's arrest, Detective Falcone was a member of the Philadelphia Police Department for 5 years in the 16th District.

[3] The Detective testified that the location of Spiro's Bar, 39th and Girard Avenue, is "very violent, [and has a lot of] drug activity and plenty of shootings and robberies." He also testified that a confidential informant "could be harmed, killed, [and] their family could be tormented" if their identity was revealed (N.T. 3/11/15, p. 3-12).

*(Footnote Continued)* ———————————

reasonable belief that criminal activity is afoot and the suspect may be armed and dangerous).

[4] During defense cross-examination, the Detective agreed that the confidential informant was not mentioned in the affidavit of probable cause or in Police Officer McAllister's statement. He also testified that he did not remember the specific cases in which the confidential informant gave information that led to arrests.

_____

Police Officer Kozlowski testified that he was working with Officer McAllister that night. Officer McAllister received a phone call from Detective Falcone and at the same time flash information came over the police radio for Spiro's Bar, along with identifying information for defendant and his car, and stating that he was armed with a gun. The officers arrived at the bar 4 to 5 minutes after the information was received. Upon arrival, they confirmed that the white Ford Crown Victoria with PA tag HXY-1059, was there in the bar parking lot. The two officers and Sergeant Zerweck went inside the bar and immediately saw [Appellant] 3 to 5 feet from the front door sitting at the bar and exactly meeting the flash description.[5] When the officers walked in and approached [Appellant], [Appellant's] back was not fully towards the officers (police came in from the left side of [Appellant] as [Appellant] was facing forward; [Appellant's] left side of his body was a little further back as opposed to the right side of his body). Officer Kozlowski testified that he could see [Appellant's] arm reach towards his front waistband area with his right hand.[6] At the time that Officer Kozlowski observed [Appellant] reach for his waistband, the officer felt "fearful for my life that he might have a weapon." His partner, Officer McAllister then conducted a pat-down of [Appellant] and recovered a .32 caliber gun (N.T. 3/11/15, p. 14-25).

_____

[5] Commonwealth exhibit C -1 showed the bright green polo shirt worn by defendant.

[6] Officer Kozlowski is a 9 year veteran officer, spending 6 of those years in the 16th District. He also testified that the 16th District is a "very high crime related, violent crime []" area. He had made approximately 20 gun arrests as of 2013, and recovered the guns from the front of defendants' waistbands or around the waistband area.

_____

Police Officer McAllister testified to the same facts as above.[7] He also testified that [Appellant] turned around when uniformed police walked into the bar, attempted to stand up, and then went to reach for his waistband. He and Sergeant Zerweck grabbed [Appellant's] arms. He did a safety frisk, and in the front of [Appellant's] belt buckle, he could feel a bulge, like a handle from a firearm. He then pulled out the firearm. The officer also recovered narcotics (28 blue heat[-]sealed packets of crack-cocaine and a baggy of 5 pills of Oxycodone) and United States currency from [Appellant] (NJ. 3/11/15, p. 25-37).

_____

[7] Officer McAllister testified that he was a police officer in the 16th district for 7 years. He also testified that the area is a "high crime, violent area" and he has made around 10 gun arrests during his 7 years with the department where many times guns were thrown from the waistband area of defendants.

_____

Detective Dilauro testified that he applied for and received a search warrant for [Appellant's] car based on the information received from [the] above officers. The vehicle was run through the Bureau of Motor Vehicles and came back as owned by [Appellant]. Also, prior to the warrant being approved, a K9 dog indicated that there were narcotics in [Appellant's] vehicle (N.T. 3/11/15, p. 37-44).

Trial Court Opinion (TCO), 9/11/15, at 2-5 (one footnote omitted).

After the hearing on Appellant's pretrial motions, the court denied his request for the Commonwealth to reveal the identity of the CI, and it also denied his motion to suppress the evidence recovered from his person and vehicle. Appellant's case proceeded to a non-jury trial, at the close of which Appellant was convicted of PWID, 35 P.S. § 780-113(a)(30); possession of a controlled substance, 35 P.S. § 780-113(a)(16); possession of a firearm by a person prohibited, 18 Pa.C.S. § 6105(a)(1); carrying a firearm without a

license, 18 Pa.C.S. § 6106(a)(1); and carrying a firearm in public in Philadelphia, 18 Pa.C.S. § 6108. Appellant was sentenced on July 17, 2015, to an aggregate term of 56 to 120 months' incarceration, followed by 60 months' probation.

Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents two issues for our review:

> 1. Did the [l]ower [c]ourt err in denying the motion to reveal the information on the identity of the [CI]?
>
> 2. Did the [l]ower [c]ourt err in denying the motion to suppress?

Appellant's Brief at 4.

Appellant first challenges the court's denial of his motion to compel the Commonwealth to reveal the identity of the CI in this case.

> "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." ***Commonwealth v. Washington***, 63 A.3d 797, 801 (Pa. Super. 2013).
>
> > Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:
> >
> > > (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

> (i) the names and addresses of eyewitnesses....

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. ***Commonwealth v. Bing***, [551 Pa. 659, 713 A.2d 56 (1998)]; ***Commonwealth v. Roebuck***, 545 Pa. 471, 681 A.2d 1279, 1283 n.6 (1996). In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. ***Roebuck, supra*** at 1283. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth. ***Bing, supra*** at 58; ***Commonwealth v. Herron***, 475 Pa. 461, 380 A.2d 1228 (1977).

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible

> defenses, the possible significance of the informer's testimony, and other relevant factors.
>
> *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).

*Commonwealth v. Watson*, 69 A.3d 605, 607-08 (Pa. Super. 2013) (quoting *Commonwealth v. Marsh*, 997 A.2d 318, 321–322 (Pa. 2010)).

In challenging the trial court's denial of his request to reveal the identity of the CI, Appellant essentially argues that Detective Falcone's testimony regarding the CI provided insufficient information to demonstrate the reliability of the CI's tip. In particular, Appellant contends:

> Detective Falcon did not state how many times the [CI] had given him information. Detective Falcone did not state how many times the [CI] gave correct information and how many times the [CI] gave incorrect information. Detective Falcone did not state how many times the [CI] gave information resulting in charges, and how many times those charges were dropped or resulted in an acquittal. Detective Falcone did not state the neighborhood where the [CI] operated, or his ethnic, religious, age, business, or organizational identity. Detective Falcone neither admitted nor denied whether there was any financial relationship between the [CI] and the police. Detective Falcone neither admitted nor denied whether the [CI] received any consideration, immunity or favors from the police or prosecutors.

Appellant's Brief at 16. In sum, Appellant avers that he "was denied the ability to investigate the source, reliability, or circumstances of the information given to Detective Falcone[]" and, thus, the court should have granted his motion to compel the Commonwealth to reveal the CI's identity. *Id.* at 17.

Initially, our review of the record demonstrates that in Appellant's cross-examination of Detective Falcone, he did not attempt to ask most of the questions he now claims he was "denied the ability to investigate…." **Id.** For instance, Appellant did not ask the detective how many times the CI provided him with information; how many times that information led to arrests and convictions versus acquittals or dropped charges; what neighborhood the CI "operated" in, "or his ethnic, religious, age, business, or organizational identity." **Id.** Instead, Appellant only cross-examined Detective Falcone about whether the detective could recall "specific cases" in which the CI had provided "information that led to arrests and convictions[,]" and also whether the CI was paid, or if he received any other consideration, for the information he provided to authorities. N.T. Hearing, 3/11/15, at 12. This record demonstrates that Appellant's argument pertaining to the other information he was ostensibly 'denied' is specious, as he never asked for that information from the testifying detective.

Moreover, Appellant only baldly asserts that the "[i]nformation relating to the identity of the [CI was] material to the defense." Appellant's Brief at 17. He does not offer any discussion, or cite to any legal authority, to support this assertion. Appellant's scant argument is insufficient to demonstrate that the trial court abused its discretion in concluding that he failed to demonstrate that the CI's identity was material to his defense. The identity of the CI was relevant to attacking the reliability of his/her tip to police and, from there, whether the officers had reasonable suspicion to pat-

down Appellant's person. However, even if the tip to police had been *anonymous*, Officers Kozlowski and McAllister corroborated that tip by observing the car described by the CI outside the bar, and then seeing Appellant inside the bar wearing the same clothing as that described by the CI. Most importantly, the officers both testified that as they approached Appellant, he reached for his waistband. The officers stated that they know, from their experience, that the waistband is often a location where a gun is concealed. These facts demonstrated the reliability of the tip that Appellant had a handgun. Therefore, we agree with the trial court that Appellant failed to prove that obtaining the identity of the CI, in order to attack his/her overall reliability, was material to Appellant's defense, where there was evidence that the CI's specific tip in *this* case was reliable.

In Appellant's second issue, he argues that the trial court erred by denying his motion to suppress the evidence recovered from his person and vehicle.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. ***Commonwealth v. Davis***, 491 Pa. 363, 421 A.2d 179 (1980). Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. ***Commonwealth v. Bomar***, 573 Pa. 426, 826 A.2d 831, 842 (2003). However, where the appeal of the determination of the suppression court turns on allegations of legal error, "the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied

the law to the facts." ***Commonwealth v. Nester***, 551 Pa. 157, 709 A.2d 879, 881 (1998).

***Commonwealth v. Foglia***, 979 A.2d 357, 360 (Pa. Super. 2009) (quoting ***Commonwealth v. Kemp***, 961 A.2d 1247, 1252–1253 (Pa. Super. 2008) (en banc) (citation omitted)).

In this case, Appellant challenges whether Officers Kozlowski and McAllister possessed reasonable suspicion to justify the ***Terry*** pat-down of his person. In contending that they did not, Appellant argues that,

> [t]he information about the [CI] was so flimsy that the Commonwealth was not able to establish the credibility of its [CI]. Without establishing the credibility of the [CI], the Commonwealth could not show a reasonable suspicion for the police investigation of the tavern.

Appellant's Brief at 18. Appellant also reiterates his attack on Detective Falcone's testimony, claiming that it was insufficient to "assess whether the tip was accurate or fictitious." ***Id.*** at 21, 22. Thus, he concludes that "the tip attributed to the [CI] was not trustworthy," and as such, there was no reasonable suspicion to support the ***Terry*** frisk. ***Id.*** at 22.

We disagree. This Court has explained:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather,

even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

Police cannot initiate a detention based solely upon an anonymous tip that a person matching the defendant's description in a specified location is carrying a gun. However, if the person described by the tipster engages in other suspicious behavior, such as flight, reasonable suspicion justifying an investigatory detention is present. Evasive behavior also is relevant in the reasonable-suspicion mix. Moreover, whether the defendant was located in a high crime area similarly supports the existence of reasonable suspicion. Finally, if a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred.

*Foglia*, 979 A.2d at 360-61 (internal citations, quotation marks, and footnote omitted).

Here, the trial court determined, and we agree, that Officers Kozlowski and McAllister had reasonable suspicion to conduct the *Terry* frisk of Appellant based on the totality of circumstances present in this case. In particular, the tip in this case was from a *known* CI and, therefore, it carried more "indicia of reliability" than an anonymous tip. *See Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. Super. 2010) ("[W]e have recognized a known informant is far less likely to produce false information[,]" and therefore, "[a] known informant's tip may carry sufficient 'indicia of reliability' to justify an investigative detention despite the fact that it may prove insufficient to support an arrest or search warrant.") (citations omitted). Moreover, the CI's tip was corroborated by the independent observations of Officers Kozlowski and McAllister. In particular, at the

location where the CI claimed Appellant could be found, the officers saw a vehicle matching the description and plate number provided by the CI. Inside the bar, they saw Appellant, who was wearing clothing described by the CI. As the officers approached Appellant, he reached toward his waistband, which each officer knew from experience was a common place for a weapon to be concealed. Because the CI alleged that Appellant possessed a firearm, his act of reaching for his waistband bolstered the officers' reasonable belief that he was actually carrying a gun in his pants. *See Foglia*, 979 A.2d at 361. Additionally, Detective Falcone testified that the area where Appellant was located had "plenty of shootings" and was a "very violent" area. N.T. Hearing at 8. Based on the totality of these facts, we conclude that the officers had reasonable suspicion to justify the *Terry* frisk of Appellant's person. *See id.* (finding reasonable suspicion to warrant a pat-down where an officer was patrolling an area known for drugs and weapons; he received an anonymous tip that a man dressed in black was carrying a gun; at the scene, the officer observed a man matching the description who began engaging in evasive behavior by continually looking at the officer and walking away; and the man touched his waist area, which the officer knew from his experience to be a location where weapons are often concealed").

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/1/2016