J-A23027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| DAVID WAYNE BROWN, | |
| Appellee | No. 278 WDA 2019 |

Appeal from the Order Entered January 17, 2019
In the Court of Common Pleas of Greene County
Criminal Division at No(s):  CP-30-CR-0000145-2018

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED  DECEMBER 16, 2019**

The Commonwealth appeals from the trial court's January 17, 2019 order dismissing the charges against Appellee, David Wayne Brown, due to the Commonwealth's failure to disclose the identity of the confidential informant (CI) in this case, as directed by the court in an order entered on December 26, 2018.  After careful review, we affirm.

The Commonwealth summarizes the procedural history and facts of this case, as follows:

> On January 9, 2018, Detective Michael Hampe of the Greene County District Attorney's Office and the Greene County Drug Task Force (DTF) filed a complaint charging ... [A]ppellee with committing the following offenses on October 27, 2016[,] at the parking lot of … [a] Giant Eagle in Jefferson Township: Possession With Intent to Deliver ("PWID") (Cocaine)[,][1][] Delivery (Cocaine)[,][2][] Criminal Use of Communication Facility[,][3][] and Possession (Cocaine).[4]

[1] 35 Pa. C.S.A. § 780-113 (a)(30).

² 35 Pa. C.S.A. § 780-113 (a)(30).
³ 18 Pa. C.S.A. § 7512 (a).
⁴ 35 Pa. C.S.A. § 780-113 (a)(16).

The Commonwealth filed informations on June 20, 2018. … [A]ppellee waived formal arraignment on August 27, 2018. On October 9, 2018, ... [A]ppellee filed the following pleadings: "Motion for Additional Discovery"[;] "Omnibus Pretrial Motion"; "Notice of Alibi *Nunc Pro Tunc*"; and an "Omnibus Pretrial Motion", which included a "Motion to Reveal Identity of Confidential Informant." According to the alibi notice, ... [A]ppellee was on a flight home from Orlando, Florida[,] at the time of the illicit transaction or at dinner with his girlfriend after landing…[.] [A]ppellee's pre-trial motion alleges misidentification such that disclosure of the CI would "exonerate [Appellee]."

At a hearing on November 13, 2018[,] Detective Hampe related that he served on the Greene County Drug Task Force (GCDTF). He had worked as a police officer since 2003 for the Charleroi, Brownsville, Redstone Township, and California (Pennsylvania) Police Departments as well as the Fayette County Drug Task Force. Prior to the incident which resulted in the present prosecution, the CI who assisted had provided reliable information corroborated by other sources. Information provided by this CI led to other arrests.

The CI provided the telephone number utilized in this transaction: []724[-]531-5993. Detective Hampe testified that appellee's son, David Brown, III, utilized the same phone number in another Greene County case. … Detective Hampe did not know of any account assigned to ... [A]ppellee for that telephone number.

Three other officers were near the site of the "buy" but were not in a position to see the driver of the suspect's car. Detective Hampe testified that, as he sat in the driver's side of his vehicle at the Giant Eagle parking lot, a Volkswagen bearing plate KCM3062 and operated by but not registered to ... [A]ppellee pulled up driver's side to driver's side in the adjacent parking stall. Detective Hampe testified as to the proximity of the two vehicles: "Due to how close he was to me - - - pulled up in the vehicle - - I was concerned at the time he would maybe recognize me." On cross-examination, he added: "[O]nce I identified myself, I … really wasn't looking … directly at him…. I had a [hat] on, too, and I tried to, you know, keep my head tilted and stuff so he

couldn't get a good look." When the court suggested that "you weren't necessarily staring at the man,["] Detective Hampe responded: "I got a good look at him when he pulled in." Detective Hampe recognized ... [A]ppellee not only from his JNET photograph and "David Brown" Facebook account, but also from seeing him walk the streets in Brownsville Borough between 2005 and 2007[,] as well as around Redstone Township and California (Borough). When asked on cross-examination whether he had seen ... [A]ppellee since 2007, he responded: "Yes, it's been awhile." Detective Hampe's passenger, the CI, exited the detective's car and entered the Volkswagen for a transaction lasting three to four minutes before returning to the vehicle with crack cocaine. ... [A]ppellee never emerged from the Volkswagen. With respect to the motion to identify the CI, Detective [Hampe] expressed concerns "for the safety of the [CI]. [Disclosure c]ould potentially jeopardize any other cases that was [*sic*] worked…." The CI was not utilized subsequent to this incident.

Commonwealth's Brief at 5-8 (citations to the reproduced record omitted).

Following the November 13, 2018 hearing, the court issued an order on November 16, 2018, setting forth the following findings of fact:

Detective Michael Hampe is the arresting officer, that he has been a police officer for approximately fifteen years. That on October 27, 2016, Detective Hampe was involved with a female confidential informant and that Detective Hampe testified that a telephone number, 724-531-5993, was used to facilitate communications with [Appellee]. The [c]ourt is not factually determining that the communication was made to the instant [Appellee].[1]

The [c]ourt also determines that Detective Hampe does not know the true owner of the account associated with that telephone number, and the [c]ourt now determines that several other police officers were at the Giant Eagle, located in Dry Tavern,

---

[1] Detective Hampe testified that he did not know "the owner of that number" or "the provider for that number, whether it was Verizon, Sprint, or whether it was a Tracfone[.]" N.T. Hearing, 11/13/18, at 22. He also admitted that, while he knew the CI had spoken "by voice" with someone at that telephone number, the detective was not present for that conversation, and he did not attempt to identify the person to whom the CI had spoken. *Id.* at 23.

Pennsylvania, on October 27, 2016. Those included Detective David Lloyd, Officer Shawn Wood, and Detective Donald Cross. The [c]ourt now determines that the named police officers, with the exception of Detective Hampe, were not in a position to identify [Appellee].

The [c]ourt will also determine as factual that Detective Hampe had interactions with [Appellee] approximately eleven years prior to the alleged transaction on October 27, 2016.

The [c]ourt now determines that the person that was the "seller" in the alleged drug transaction was driving a Volkswagen owned by someone other than … [Appellee] in the instant case.[2]

The [c]ourt believes that Detective Hampe was concerned about [Appellee's] recognizing him as a result of their prior interactions. Therefore, the [c]ourt does believe that Detective Hampe engaged in no conversation with [Appellee] and Detective Hampe made efforts to conceal his identity.

The [c]ourt determines as factual that the [CI] is no longer used as a [CI], this came from the testimony of Detective Hampe. This apparently was the last activity in which the [CI] was engaged. The [c]ourt recognizes that the delay in the filing of charges was supported in part by a desire to protect this identity of the [CI].

The Commonwealth has set forth vague concerns for the safety of the [CI] and has provided no factual detail which would support the concern for safety. The Commonwealth has indicated that revealing the identity of the [CI] could potentially jeopardize other cases. Again, the [c]ourt has determined that the [CI] has been engaged in no activity since October 27, 2016; however, the [c]ourt has insufficient facts before it to determine whether there are other pending investigations [that] may be compromised.

Finally, the [c]ourt recognizes that Detective Hampe indicate[d] that the [CI] entered the vehicle in which the drug transaction is alleged to have occurred and spent three to four minutes in that car. The [c]ourt further recognizes that with the

---

[2] Detective Hampe testified that the vehicle was registered to "Jeffrey David Morrell" of "Vestaburg, [Pennsylvania]." N.T. Hearing at 21. The detective did not make any efforts to contact Morrell to discern "why his vehicle was engaged in a drug transaction[.]" *Id.* at 22.

exception of Detective Hampe, the [CI] is, the only person in a position to potentially exonerate [Appellee].

Order, 11/16/18, at 2-5 (unnumbered).

After accepting briefs on this issue by the parties, the court filed a second order, and accompanying opinion, on December 26, 2018, ordering the Commonwealth to disclose the identity of the CI. In support of this order, the court explained:

> In determining whether the identity of a [CI] should be revealed[,] the [c]ourt must decide an appropriate balance under the law weighing the interests of both the Commonwealth and the [d]efendant.
>
> In its [o]rder of November 16, 2018, the [c]ourt indicated that [it] had determined as fact[] that the [CI] was no longer used by law enforcement, [and] that the Commonwealth cited only vague concerns about the safety of the [CI] in the event that that person's identity was revealed.
>
> The [c]ourt is aware that the revelation of the identity of a [CI] may cause safety concerns for the [CI]. However, the [c]ourt, on balance, recognizes the constitutional right of [Appellee] to cross[-]examine and confront witnesses.
>
> The Commonwealth offered no testimony that [Appellee] had any propensity to violence. The Commonwealth offered no testimony that the [CI] would be in danger of physical harm, and on balance, the only person who could reveal the identity, or shed light on the identity of the "seller[,]" is the [CI].

Order, 12/26/18, at 8-9.

On January 10, 2019, the Commonwealth filed a response to the court's order indicating that it would not disclose the CI's identity. Consequently, on January 17, 2019, the court issued an order dismissing the charges against Appellant.

The Commonwealth filed a timely notice of appeal from that order, and it also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On March 7, 2019, the court filed a Rule 1925(a) opinion. Herein, the Commonwealth states one issue for our review:

> Did the [trial] court err by misconstruing the facts and misapplying the law in determining that the circumstances presented required dismissal of the prosecution as the sanction for the Commonwealth's refusal to reveal the identity of a [CI] who facilitated a clandestine drug transaction in the presence of an undercover police officer?

Commonwealth's Brief at 4 (unnecessary capitalization omitted).

> We begin by recognizing that the Pennsylvania Supreme Court
>
> has adopted the guidelines articulated by the United States Supreme Court in ***Roviaro v. United States****,* 353 U.S. 53 … (1957), to guide trial courts in the exercise of their discretion in cases where, as here, the defendant requests the identity of a [CI] who is also an eyewitness:
>
>> We believe that no fixed rule with respect to disclosure of the [CI's] identity is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders the nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.
>
> ***Commonwealth v. Carter****,* … 233 A.2d 284, 287 ([Pa.] 1967), (quoting ***Roviaro****,* [353 U.S.] at 60-62…).

***Commonwealth v. Bing****,* 713 A.2d 56, 58 (Pa. 1998) (original brackets omitted).

Additionally, the Court has explained that,

[u]nder Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including [a CI], where a defendant makes a showing of material need and reasonableness:

(a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses....

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. … **Bing, supra** at 58; **Commonwealth v. Roebuck**, 681 A.2d 1279, 1283 n. 6 ([Pa.] 1996). In order to overcome this qualified privilege and obtain disclosure of a [CI's] identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. **Roebuck, supra** at 1283. Only after the defendant shows that the identity of the [CI] is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth. **Bing, supra** at 58; **Commonwealth v. Herron**, … 380 A.2d 1228 ([Pa.] 1977).

In striking the proper balance, the court must consider the following principles:

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial

> court may require disclosure and, if the Government withholds the information, dismiss the action.

***Commonwealth v. Marsh***, 997 A.2d 318, 321-22 (Pa. 2010).

In applying this law to the present case, we initially observe that the Commonwealth does not meaningfully develop an argument that Appellee failed to meet his threshold burden of establishing materiality under Rule 573. In any event, had such a claim been presented, we would reject it. The CI's identity is clearly material to Appellee's defense of mistaken identity, as the CI is the only person, aside from Detective Hampe, who can identify Appellee. Furthermore, Detective Hampe's testimony indicates potential weaknesses in his identification. For instance, the detective testified that his view of the seller was brief and limited, due to the detective's efforts to conceal his own face from the seller's view. We also note that the detective testified that the sale occurred at night, which could have further hindered his observations of the seller. N.T. Hearing at 24. Additionally, the significant lapse in time between the drug sale in October of 2016, and the filing of the criminal information in June of 2018, might have diminished Detective Hampe's recollection of the seller. Finally, there is no other corroborating evidence to support the detective's identification of Appellee, such as evidence linking Appellee to the vehicle, or a direct tie between Appellee and the telephone number called by the CI. For these reasons, we conclude that the evidence presented at the hearing demonstrated that the CI's identity is material to Appellee's defense, and his request for the CI's identity is reasonable.

We also conclude that the trial court did not abuse its discretion by finding that the relevant factors in this case weigh in favor of disclosing the CI's identity. In **Bing**, our Supreme Court explained:

> In prior cases in which this Court has required the identity of an eyewitness informant to be revealed, the guilt of the defendant was established solely through the testimony of police officers who had viewed the defendant only a single time, or through the uncorroborated testimony of a single officer. For example, the appellant in **Carter** was convicted of selling narcotics to an informant in the presence of an undercover officer. At trial, the only Commonwealth witnesses were the purchasing officer and an agent for the Federal Bureau of Narcotics who was sitting in a car parked half a block away at the time of the sale. Not only were the identifications of the appellant by both witnesses based on a single viewing, but the defense consisted solely of [the] appellant's claim of mistaken identity. Under these circumstances, this Court held that the trial court's refusal to order the Commonwealth to disclose the name of the confidential informant constituted reversible error.
>
> In **Commonwealth v. Payne**, 540 Pa. 54, 656 A.2d 77 (1994), the appellant sold cocaine to an undercover Pennsylvania State Trooper in the presence of an informant. The appellant was not arrested until seven months after the incident. At trial, the officer, who had never encountered the appellant before, was the only prosecution witness. The appellant raised a mistaken identity defense, testifying that he had not met the trooper prior to his arrest and that he had not been in the apartment complex where the incident occurred. Because of the single viewing of [the] appellant by a single officer, and the lapse of time between the sale and the arrest which allowed for the possible impairment of the officer's memory, this Court held that the identity of the informant should have been revealed.
>
> In ... **Roebuck**, ... the appellant sold narcotics to an undercover officer on two occasions in the presence of an informant. In concluding that disclosure of the informant's identity was required with respect to the initial transaction, this Court reasoned that, as in **Payne** and **Carter**, the only eyewitness to that transaction other than the confidential informant was a police officer. The Court further noted that "there was no evidence

whatsoever presented that disclosure would jeopardize the safety of the confidential informant...." [**Roebuck**,] 681 A.2d at 1284.

**Bing**, 713 A.2d at 58-59 (footnote omitted).

In **Bing**, the Court upheld the trial court's denial of Bing's request for the CI's identity. The Court reasoned that "the risk of misidentification that was present in **Payne**, **Carter**, and **Roebuck** [was] not present" where Bing's identification was premised on **seven** separate observations by **three** different police officers, one of whom had "observed [Bing] for a significant amount of time and at a close distance." **Id.** at 59. More importantly, the Court stressed that "the Commonwealth presented evidence that demonstrated that the [CI's] safety would be jeopardized by disclosure of his identity[,]" including testimony by an officer that the CI "had been harassed as recently as one month before the hearing, and had received a threat stemming from his suspected cooperation with police." **Id.** at 60. Furthermore, the CI "was assaulted after it became known in the community that [the officer working undercover with the CI] had been seen with members of the Drug Task Force." **Id.** The **Bing** Court held that "[i]t is this showing of a reasonably specific type of danger which justifies keeping an informant's identity confidential." **Id.**

It is amply clear that the present case is distinguishable from **Bing** and analogous to **Payne**, **Carter**, and **Roebuck**. As in the latter three cases, Detective Hampe's identification of Appellee is premised on a single drug sale, the detective is the Commonwealth's sole eyewitness who can identify

Appellee (aside from the CI), there is no other evidence to corroborate his identification, and Appellee's defense is that of mistaken identity.

Moreover, the risk of misidentification of Appellee is more significant than in *Carter*, *Payne*, and *Roebuck*. Unlike in those cases, the drug sale did not occur in Detective Hampe's presence, but in a separate vehicle, and Detective Hampe's view of the seller was limited by his efforts to conceal his own face from the seller. Additionally, the delay between the sale and Appellee's arrest was greater than that in *Payne*, making it more likely that Detective Hampe's memory of the sale could be impaired.

We also find it significant that the phone number called by the CI in this case was used by Appellee's son, David Wayne Brown, III, in an unrelated drug case in Greene County. Moreover, the trial court states in its Rule 1925(a) opinion that it "required the Commonwealth to reveal the identity of the [CI] as [Appellee's] son … was charged with similar drug transactions in both Greene and Washington County at or around the same time-frame." Trial Court Opinion, 3/7/19, at 1-2 (unnumbered). Appellee's son's alleged involvement in drug sales around the same time as the present sale, and his use of the phone number called by the CI in this case, bolsters the possibility that Appellee was misidentified in this case.

Lastly, unlike in *Bing*, the Commonwealth did not present evidence that the CI would face a specific type of danger if her identity is revealed. Moreover, because the police are no longer using her as an informant, the disclosure of her identity would presumably have little impact on the public's

future interest in effective law enforcement, and the Commonwealth presented insufficient information to show that "pending investigations … may be compromised." Order, 11/16/18, at 4.

Balancing these relevant considerations, we conclude that the trial court did not abuse its discretion by ordering the Commonwealth to disclose the identity of the CI. Because the Commonwealth refused to adhere to that order, the court properly dismissed the charges against Appellee.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/16/2019