J-A22014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MARQUISE BELL | |
| Appellant | No. 2722 EDA 2016 |

Appeal from the Judgment of Sentence January 11, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003088-2014

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 12, 2017**

Marquise Bell appeals from the judgment of sentence of six to twenty-three months incarceration followed by a consecutive four year period of probation imposed for his convictions of possession with intent to deliver ("PWID"), conspiracy to PWID, and possession of a controlled substance. Appellant was convicted for his role in facilitating drug purchases in Philadelphia from September 21, 2013, through October 9, 2013.  The sole issue on appeal challenges the trial court's refusal to order the Commonwealth to disclose the names of confidential informants used in those two transactions.  We affirm.

_____
*  Retired Senior Judge specially assigned to the Superior Court.

Philadelphia Police Officer Joseph McCook testified that he conducted ongoing surveillance of narcotics sales occurring in the 1800 and 1900 blocks of East Thayer Street. On September 21, 2013, Officer McCook utilized confidential informants (hereinafter collectively referred to as "CI"s) to buy drugs from that area. In Officer McCook's presence, the first CI placed a phone call and arranged a deal. The officer released the CI and, from a distance of approximately fifty feet, observed the following. Appellant exited 1856 East Thayer Street, where he met the CI and accepted pre-recorded buy money. Appellant then walked away, entered the home at 1928 East Thayer Street, and returned with items that he handed to the CI.[1] The CI returned to Officer McCook and handed over the items, which were twenty-five vials of crack cocaine capped with purple lids.

On October 4, 2013, Officer McCook utilized a different CI to arrange another transaction. Appellant and a male with a bicycle were outside of 1856 East Thayer Street. Officer McCook observed Appellant hand money to the man on the bike, who then rode to 1928 East Thayer and retrieved items from inside. The bicyclist then handed items to Appellant, who secreted the objects in a nearby wall. As with the September 21st transaction, Officer

---

[1] The 1928 East Thayer Street home was approximately 200 feet from Officer McCook's vantage point. He testified that he did not lose sight of Appellant except for the period that he entered the home.

McCook observed the CI from a distance of approximately fifty feet. The CI approached Appellant and gave him money, whereupon Appellant retrieved objects from the wall. Appellant gave the CI these items, later determined to be four vials of crack cocaine capped with purple lids, which were ultimately turned over to Officer McCook.[2] Appellant was seen engaging in several other similar transactions with numerous unidentified buyers. Both of these sales occurred in the afternoon.

Based on these and other transactions, Officer McCook prepared a search warrant for 1928 and 1856 East Thayer Street.[3] On October 9, 2013, Officer McCook conducted pre-raid surveillance and observed Appellant and other persons standing outside 1856 East Thayer. During this surveillance, he observed a vehicle arrive and park in front of 1928 East Thayer. The passenger went inside the property, while the driver exited and spoke to Appellant. The driver handed Appellant something from a container, and the driver then entered the 1928 residence. While other persons entered 1928 East Thayer Street on that day, Appellant was not among them.

_____

[2] Appellant stipulated to the property receipt and laboratory tests.

[3] Officer McCook also testified that he used CIs on two other transactions that occurred on September 25, 2013, and October 8, 2013, which followed a similar pattern but did not involve Appellant.

At some point, police officers raided the area and searched the residences. As part of the raid, Appellant, who was accompanied by two females, was arrested a short distance from the homes. He did not have any controlled substances nor any pre-recorded buy money. A search of the vehicle outside the 1928 residence yielded 149 clear vials of crack cocaine topped with purple lids.

Appellant sought disclosure of the identities of the CIs used on September 21 and October 4. He asserted a mistaken identity defense, and averred that he was merely walking in the area when the raid occurred. The trial court denied the motion. Appellant proceeded to a bench trial, where he was found guilty of all charges. Appellant received the aforementioned sentence, and appealed to this Court.[4] He presents one issue for our review:

> Did not the lower court err and abuse its discretion in denying appellant's motion to compel disclosure of the identity of confidential informants who were eyewitnesses to two alleged drug sales by appellant, where appellant met his burden that the information sought was material to the defense and the request was reasonable, and where the Commonwealth failed to demonstrate any exceptional or compelling reason for nondisclosure that outweighed appellant's right to prepare a defense?

Appellant's brief at 3.

---

[4] Appellant did not file an appeal. He filed a timely PCRA petition seeking reinstatement of his appellate rights, which was granted.

- 4 -

The sole issue on appeal challenges the trial court's denial of the motion seeking the identities of the two CIs used by Officer McCook on September 21, 2013, and October 4, 2013. He noted his expectation that the CIs would corroborate his mistaken identity defense. "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Washington*, 63 A.3d 797, 801 (Pa.Super. 2013).

Pennsylvania Rule of Criminal Procedure 573(B) provides, in pertinent part, that the trial court has discretion to require the Commonwealth to provide the names of confidential informants "upon a showing that they are material to the preparation of the defense, and that the request is reasonable[.]" Pa.R.Crim.P. 573(B)(2)(a)(i). Therefore, the defendant seeking disclosure must first establish the materiality and reasonableness of the request.

Our law has recognized that there is a "qualified privilege to preserve the informant's confidentiality in order to protect the flow of information from informants and thereby maintain the public's interest in effective law enforcement." *Commonwealth v. Roebuck*, 681 A.2d 1279, 1282–83 (Pa. 1996) (footnote omitted). Thus, once the defendant satisfies the materiality and reasonableness components, the trial court must determine whether the Commonwealth is required to disclose the information in light of the privilege. "Only after a showing by the defendant that the information

sought is material and the request reasonable is the trial court called upon to exercise its discretion to determine whether the information is to be revealed." ***Commonwealth v. Bing***, 713 A.2d 56, 58 (Pa. 1998) (citation omitted).

The precise showing demanded of the defendant is difficult to quantify, as the point of obtaining the identity is to determine what the witness knows. Thus, by necessity we must examine the circumstances of the case, and the precedents in this matter apply a reasonableness standard. ***See Commonwealth v. Herron***, 380 A.2d 1228, 1231 (Pa. 1977) ("[A]t a minimum Herron . . . should have informed the court in an offer of proof of facts . . . which would have suggested the possibility that disclosure of the informer's identity might indeed have been relevant and helpful[.]); ***Commonwealth v. Payne***, 656 A.2d 77, 81 (Pa. 1994) (Castille, C.J., concurring) (a defendant "must demonstrate that there is a reasonable likelihood that the witness will exonerate the defendant and that the evidence is not obtainable from another source."); ***Commonwealth v. Belenky***, 777 A.2d 483, 488 (Pa.Super. 2001) (defendant "must demonstrate a reasonable possibility the informant could give evidence that would exonerate him"). ***See also Commonwealth v. Novasak***, 606 A.2d 477, 483 (Pa.Super. 1992) (for discretionary discovery requests in general, the "proper focus of our analysis must concern whether appellant provided

the court of common pleas with enough factual data to justify granting the discovery request.").

Additionally, when the discretion to disclose is implicated, there can be no fixed rule regarding whether disclosure must occur. *Commonwealth v. Marsh*, 997 A2d 318, 322 (Pa. 2010). "Rather, the determination must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors." *Id*. at 322–23. When the defendant has established a foundation for disclosure, the trial court must then determine whether disclosure is warranted by applying the guiding principles first set forth by the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957).[5]

---

[5] *Roviaro* is not binding as it was decided on evidentiary principles; however, we have adopted its standards due to the underlying constitutional issues. *See Commonwealth v. Carter*, 233 A.2d 285, 286, n.4 (Pa. 1967) (noting that the principles announced "ha[ve] a federal constitutional resonance"). The United States Supreme Court has likewise observed that

> [w]hile *Roviaro* was not decided on the basis of constitutional claims, its subsequent affirmation in *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), where both due process and confrontation claims were considered by the Court, suggests that *Roviaro* would not have been decided differently if those claims had actually been called to the Court's attention.

*United States v. Valenzuela-Bernal*, 458 U.S. 858, 870 (1982).

The trial court heard argument on both the initial burden and the balancing test, and the Pa.R.A.P. Rule 1925(a) opinion on the matter discusses both. The Commonwealth maintains that affirmance is warranted on the ground that Appellant failed to meet his initial burden. "[Appellant] failed to demonstrate that informants possessed **any** non-incriminating information, much less material evidence[.]" Commonwealth's brief at 11 (emphasis in original). The Commonwealth states that Appellant presented only speculation, which "is insufficient to make the threshold showing that is required . . . for a judge to balance the competing factors[.]" *Id*. at 14. We agree.

In its Pa.R.A.P. 1925(a) opinion, the trial court determined that Appellant failed to establish materiality for the reasons outlined in *Commonwealth v. Watson*, 69 A.3d 605, 608 (Pa.Super. 2013), which held that a defendant failed to make the threshold showing. Therein, a police officer used a CI to purchase drugs from a particular residence. From approximately thirty feet away, the officer watched the CI approach Watson and hand over money. Watson then went inside the home and returned with vials of crack cocaine, which the CI returned to the officer. Based upon this observation, the officer prepared a search warrant for the home, which was executed two days later. When the officers arrived, they observed Watson exit the home and discard, underneath a parked vehicle, objects which were retrieved and proven to be crack cocaine. Watson was then charged with

offenses pertaining to both dates, and unsuccessfully sought disclosure of the CI's identity. On appeal, we determined that Watson failed to meet his burden, emphasizing the observations made on the day of arrest:

> Most problematic with [Watson]'s misidentification argument is that officers executing the warrant observed him throw multiple vials of crack cocaine under a parked vehicle in an obvious attempt to avoid arrest. With the basis of his misidentification defense thus completely undermined, Appellant could not reasonably prevail upon the court that disclosure of the CI was somehow material to a defense already proved incredible.

*Id*. at 608–09. **Watson** thus determined that the mistaken identification defense with respect to the prior delivery to the CI was "completely undermined" due to observations made on the day of his arrest.

In response, Appellant analogizes the circumstances of his arrest to those in **Commonwealth v. Payne**, 656 A.2d 77 (Pa. 1994). Therein, a CI informed an undercover Pennsylvania State Police trooper that Payne was willing to sell drugs. A transaction was arranged, with the trooper participating in the buy:

> The trooper and the informant followed [Payne] on foot between two buildings where the trooper in the informant's presence paid [Payne] for 7.4 grams of cocaine. The so-called informant was now clearly a witness to the crime as well. This transaction took place on May 11, 1990, but [Payne] was not arrested until December 10 of that year. Neither the officer nor any other police had any contact with [Payne] in the interim, although the officer said he saw [Payne] in the area on several later occasions.

*Id*. at 78. Our Supreme Court concluded that the CI's identity was material to Payne's mistaken identity defense, in part because the CI was the only other witness to the transaction:

> [Payne] testified at the evidentiary hearing that he had not met the trooper prior to this arrest and that he had not been at the apartment complex where the transaction occurred on the night in question. What is that if not "evidence that suggests he was not at the scene?" . . . . **Where the defense is one of mistaken identity, the defendant can do no more than deny his involvement and suggest that another eyewitness might offer evidence that would support his claim**. Here, that suggestion is bolstered by the fact that the arrest was not made until seven months after the incident, which was the only direct contact the officer had with the buyer. Surely this lapse of time allows for the possibility that the officer's memory of the transaction was mistaken.

*Id*. at 80 (emphasis added). Since *Payne* observed that a defendant "can do no more than deny his involvement" in a mistaken identity case, Appellant argues that this principle likewise applies to him, thus triggering the balancing inquiry. The Commonwealth counters that *Payne* is distinguishable as that case involved a singular drug transaction, whereas this case presents several deals; moreover, the arrest in *Payne* was made seven months after the transaction.[6]

---

[6] As indicated by *Payne*, the question of whether the balance tips in favor of disclosure overlaps to a large degree with whether the initial evidentiary burden has been met. *Payne* involved one transaction and a seven-month gap in arrest, circumstances which were relevant to both the initial burden as well as the ultimate balancing.

We agree that this case is more akin to **Watson** and that **Payne** is distinguishable.  Officer McCook observed Appellant on three separate occasions over the span of eighteen days, with the last observation occurring shortly before his arrest.  Thus, unlike **Payne**, this case does not involve a single incident nor does it involve a long lapse of time between sale and arrest such that there is a reasonable inference of faulty memory. Furthermore, all transactions in this case involved vials of crack cocaine with purple lids, and similar items were discovered in the vehicle parked outside 1928 Thayer Street, thereby establishing that the deliveries likely came from the same source.  While Appellant's direct connection to those items is not as strong as in **Watson**, that fact is simply one consideration in the overall inquiry.

We conclude that Appellant's bare assertion of mistaken identity failed to carry his initial burden under the circumstances of this case.  Our precedents have observed, "Although the defendant plainly cannot be expected to show that such information will actually be helpful to his defense, **the record should at least suggest a reasonable possibility that the information might be helpful**, so that it would be unfair to withhold it."  **Herron**, **supra** at 1230 (emphasis added).  While some situations may warrant proceeding directly to a balancing even without any additional offer of proof, such as in **Payne**, this case is not in that class for

the reasons discussed *supra*. Accordingly, we agree that Appellant failed to meet his initial burden.

In the alternative, we find, as we did in **Watson**, that the balancing of the principles announced in **Roviaro** does not favor disclosure. First, the fact that Appellant was observed on multiple occasions undercuts the need for disclosure. In **Bing**, **supra**, our Supreme Court explained, "In prior cases in which this Court has required the identity of an eyewitness informant to be revealed, the guilt of the defendant was established solely through the testimony of police officers who had viewed the defendant only a single time, or through the uncorroborated testimony of a single officer." **Id**. at 58. The present case is somewhere between these two scenarios: while guilt was established through the uncorroborated testimony of one officer, that officer viewed Appellant on multiple occasions, including the day of the arrest. **Bing** observed that the need for disclosure is greater when dealing with a single incident, due to the risk of misidentification:

> [N]umerous viewings substantially undermine the need for disclosure of the identity of the confidential informant on the ground of misidentification. Thus, the risk of misidentification that was present in **Payne**, **Carter**, and **Roebuck** is not present in the instant case. The fact that there were numerous observations of the seller, although not legally determinative, weighs in favor of maintaining the Commonwealth's privilege.

**Id**. at 59-60 (citation omitted). Hence, the reliability of the identifications is linked to the need to disclose. **Id**. at 59, n. 5 ("[T]he fact that the troopers were acquainted with appellant prior to [the incident] . . . remains relevant

- 12 -

to the reliability of their identifications of him and thus relevant to the disclosure issue."). The instant facts concern three separate observations from one officer, and we find that the numerous observations, plus the surveillance from a short distance, are factors that weigh in favor of maintaining the privilege. With respect to likelihood of misidentification, we note that Officer McCook testified that Appellant was not present on two of the other days, thereby suggesting attentive observation.

Next, we note that the existence of other witnesses also weighs in favor of non-disclosure. This was not a situation, as in *Payne*, where the alleged drug sale took place in an isolated location. The drug sales herein were conducted in the open. Additionally, Appellant maintained that he was innocently caught up in the raid; logically, he was in a position to call other witnesses to establish his lack of connection to the area. *Compare Roebuck*, *supra* at 1284, n.7 (concluding that disclosure was necessary despite presence of third party; however, record unclear as to whether the third party witness saw or heard the sale at issue and, in any event, the witness "was under indictment for [his] participation in [the sale].")

Finally, we note that the trial court properly considered the potential threat to the informants' safety. *Bing*, *supra* at 60 ("reasonably specific type of danger" justifies non-disclosure). Much of Officer McCook's testimony highlighted general concerns for the safety of confidential informants that are already accounted for in the existence of the privilege,

and therefore we agree with Appellant that those statements alone did not constitute a reasonably specific type of danger. However, the officer also stated that one of the two CIs "doesn't want to work right now because he's in fear that he may have been compromised." N.T. Pre-Trial motion, 3/11/15, at 29. We find that this factor is relevant, albeit minimally so in light of the non-specific threat, and slightly tips in favor of non-disclosure.[7] Thus, having given consideration to all the relevant circumstances, we find that the trial court did not abuse its discretion in refusing to disclose the identities.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017

---

[7] Officer McCook indicated that this particular CI was used in other deals, and therefore it is unclear whether the CI's fear was connected to this case or some other matter.