J-S63023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :         PENNSYLVANIA
  :
v.                 :
  :
  :
LAMAR MAYFIELD          :
  :
Appellant        :   No. 2737 EDA 2018

Appeal from the PCRA Order Entered July 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008294-2009

BEFORE:   GANTMAN, P.J.E., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.:         **FILED JANUARY 08, 2020**

Lamar Mayfield (Appellant) appeals from the order dismissing his

petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A.

§§ 9541-9546.  We affirm.

A prior panel of this Court summarized the pertinent facts:

On July 31, 2007, Officer Thomas Kuhn, a member of the
Philadelphia narcotics unit, received a complaint of illegal gun and
drug activity at 606 West Mayfield Street in Philadelphia.  The
complaint implicated "a black male, bald, with a beard that may
go by the name of Kevin . . . Anderson." N.T., 4/2/12, at 70.  That
same day, Officer Kuhn and his partner, Officer Roberson, initiated
an investigation of the suspect property by meeting with a
confidential informant ("CI").

After determining that the CI was carrying neither money nor
drugs, the officers provided the CI with $40.00 pre-recorded
money, and directed him to 606 West Mayfield Street.  Appellant
was sitting on the front steps of the two-story house, and

---

[*] Retired Senior Judge assigned to the Superior Court.

conversing with an unidentified man. As the officers watched, the CI and Appellant had a brief conversation, after which Appellant got up and entered the house through the unlocked front door. Within minutes, he exited the house, said something to the CI, and dropped an object into the CI's hand. In exchange, the CI gave Appellant the $40.00 buy money. The CI then returned to the officers and gave them eight red-tinted Ziploc bags of marijuana.

Officer Kuhn prepared a search warrant application for 606 West Mayfield Street. On the warrant, the officer listed the owner of record of the property, Aqueelah Barrett. Unaware of Appellant's true identity, Officer Kuhn listed the person observed making the drug deal as "occupant," and offered the following description: "one black male . . . 28 to 32 years old, dark-complected and . . . bald." N.T., 4/2/12, at 86.

On August 1, 2007, at 9:15 p.m., Officer Kuhn and other officers met to execute the warrant. When no one responded to the officers' knock and announcement that they were serving a bench warrant, they gained entry by using a battering ram on the front door. In the living room, Officer Roberson apprehended Ms. Barrett, who was seated next to her one to two month old infant, who was in a baby carrier. Next to the baby was a large Ziploc bag filled with 272.8 grams of marijuana. From the living room the officer also recovered three scales, a mirror, a sifter and a razor blade. All of these items contained a white powdery residue. Elsewhere on the first floor, the officers confiscated hundreds of unused Ziploc bags with various tints and markings, including red-tinted bags identical to those the CI had delivered to Officers Kuhn and Roberson the day before.

Lieutenant Joseph Bologna proceeded to the second floor of the house accompanied by Officer McDonnel and entered the front bedroom. When the officers lifted the mattress of the bed, they discovered the following: 1) a Tazer; 2) a .45 caliber Ruger loaded with five rounds; 3) a black Cobra Arms .380 with one round in the chamber and six in the magazine; 4) a .40 caliber Taurus with one round in the chamber, ten in the magazine, and two extra magazines; 5) a Hungarian Arms 9-millimeter with one round in the chamber and thirteen in the magazine; and 6) a silver Cobra 9-millimeter, Model MAC11, with one round in the chamber and thirty-five in the magazine.

> In a drawer in the smaller of the two nightstands, the officers found $1935.00 in cash in various denominations, including the two twenty dollar bills of prerecorded buy money the CI had used to purchase the marijuana from Appellant the day before.
>
> *   *   *
>
> During the search, other officers uncovered a second cache of five firearms in the basement of the house. They found the following: 1) a .380 caliber AMT silver model Backup with a magazine of five rounds; 2) a .22 caliber ERMA LA with a magazine of five rounds; 3) an AR-15 rifle with two magazines containing 30 rounds each; 4) a 7.62 X 39 caliber Norinco MAK-90; and 5) an AK-47. In addition to the weapons, the officers found four bags of ammunition matching the guns.
>
> Also recovered from the basement in the same area as the guns was a black duffle bag containing two rolls of duct tape, a can of pepper spray, two black ski masks with holes cut out for the eyes and mouth, two pairs of black gloves, a fake beard, a fake mustache, a mirror, a bottle of spirit gum, and a bottle of spirit gum remover.

***Commonwealth v. Mayfield***, 3315 EDA 2012, at *1-4 (Pa. Super. March 4, 2014) (unpublished memorandum). After executing the search warrant, police prepared an arrest warrant for Appellant; however, Appellant remained at large until May 24, 2009, when police apprehended him.

Following a jury trial, Appellant was convicted of possession of a controlled substance, possessing marijuana with intent to deliver (PWID), possession of drug paraphernalia, criminal conspiracy, using or possessing drug paraphernalia, seven counts of possessing an instrument of crime, five counts of possessing an offensive weapon, three counts of possession of a

- 3 -

firearm, and two counts of receiving stolen property.[1] The trial court sentenced Appellant to an aggregate term of 10 to 20 years of imprisonment. Appellant appealed without success to both this Court and the Pennsylvania Supreme Court.

On March 23, 2015, Appellant filed a timely *pro se* PCRA petition. Counsel was appointed and filed an amended PCRA petition on July 15, 2016. On February 15, 2017, the Commonwealth filed a motion to dismiss Appellant's PCRA petition as meritless. The PCRA court issued notice of its intent to dismiss Appellant's petition pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure. Appellant did not file a response. The PCRA court formally dismissed Appellant's petition on July 11, 2017. This timely appeal followed. Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.

Appellant presents the following "Statement of Questions Involved," in his brief: "Whether the court erred in not granting relief on the PCRA petition." Appellant's Brief at 8. Preliminarily, we find Appellant's Pa.R.A.P. 2116 statement of questions presented to be vague and overly broad. However, Appellant articulates three issues in the Argument section of his brief for our review: (1) whether Appellate Counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal; (2) whether Appellate Counsel was ineffective for failing to challenge the denial of the motion to compel the

---

[1] 35 P.S. § 780-113(a)(16), (30), and (32); 18 Pa.C.S.A. §§ 903, 907(a), 908(a), 6105(a)(1), and 3925(a).

identity of the confidential informant (CI); and (3) whether Appellant was prejudiced by after discovered evidence that the police officer assigned to his case was under criminal investigation for planting drugs and making false arrests. Since Appellant's failure to comply with our Rules of Appellate Procedure does not impede our ability to review the issues, we address the merits of this appeal.[2]

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

---

[2] We remind Appellant's counsel of our Rules of Appellate Procedure.

> **(a) General Rule.** The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. **No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby. Each question shall be followed by an answer stating simply whether the court or government unit agreed, disagreed, did not answer, or did not address the question.** If a qualified answer was given to the question, appellant shall indicate the nature of the qualification, or if the question was not answered or addressed and the record shows the reason for such failure, the reason shall be stated briefly in each instance without quoting the court or government unit below.

Pa.R.A.P. 2116(a) (emphasis added).

Appellant's first and second issue each allege ineffective assistance of Appellate Counsel. With respect to ineffective assistance of counsel claims, our Supreme Court has stated:

> It is well-settled that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. **Commonwealth v. Cooper**, 941 A.2d 655, 664 (Pa. 2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." **Id.** A PCRA petitioner must address each of these prongs on appeal. **See Commonwealth v. Natividad**, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the **Pierce** elements on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. **Cooper**, 941 A.2d at 664.

**Commonwealth v. Wholaver**, 177 A.3d 136, 144 (Pa. 2018) (citations modified).

In his first issue, Appellant argues that Appellate Counsel was ineffective for failing to preserve his challenge to the sufficiency of the evidence for his PWID conviction on direct appeal. Appellant asserts that there was insufficient evidence to prove that he had the specific intent to deliver a controlled substance to another person. Appellant's Brief at 19-20. Appellant contends that because he "was not seen actually delivering a controlled substance to

another person," the Commonwealth failed to meet its burden of proving every element of PWID. *Id.* at 19-20.[3]

In reviewing a challenge to the sufficiency of the evidence, we recognize:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to

---

[3] Appellant argues only that the evidence was insufficient to prove that he intended to deliver a controlled substance. Appellant does not challenge whether he possessed (or constructively possessed) the controlled substance.

- 7 -

believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

Section 780-113 of the Controlled Substance, Drug, Device and Cosmetic Act defines PWID as follows: "Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. 780-113(a)(30). To sustain a conviction for PWID, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." ***Commonwealth v. Lee***, 956 A.2d 1024, 1028 (Pa. Super. 2008) (citations omitted).

"[T]he intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver." ***Id.*** If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors. ***Id.***

> Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and . . . [the] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the

> possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

**Commonwealth v. Ratsamy**, 934 A.2d 1233, 1237–38 (Pa. 2007) (quotation and internal quotation marks omitted).

Here, the evidence supports the jury's finding that Appellant possessed marijuana with the intent to deliver. Relevantly, the record reveals that the following items were recovered from Appellant's residence: a large Ziploc bag containing 272.8 grams of marijuana, three scales, a mirror, a sifter, a razor blade, and a "couple hundred" unused Ziploc bags with various tints and markings, including red-tinted bags identical to those the CI received in the controlled drug buy. N.T., 4/2/12, at 98-101; **see also** Commonwealth's Ex. C-6. "[P]ossession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption." **Commonwealth v. Jones**, 874 A.2d 108, 121 (Pa. Super. 2005); **see also Commonwealth v. Bess,** 789 A.2d 757, 761–62 (Pa. Super. 2002) (possession of significant sums of cash, $158.00, absence of drug paraphernalia, and 2.2 grams of cocaine, supported conviction of PWID). The large quantity of marijuana, in combination with the "hundreds" of unused Ziploc bags, which matched those given to the CI during the controlled buy, was sufficient for the jury to find that Appellant had the intent to deliver a controlled substance.

Because Appellant's challenge to the sufficiency of the evidence supporting his PWID conviction lacks merit, Appellate Counsel was not ineffective for failing to preserve the claim. **Commonwealth v. Sneed**, 45

A.3d 1096, 1115 (Pa. 2012) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").[4]

In his second issue, Appellant asserts that Appellate Counsel was ineffective for failing to challenge the trial court's denial of his motion to compel the identity of the CI. Appellant avers that he was convicted based upon the testimony of the police officer who accompanied the CI. Because the CI was "an active participant" in the transaction, Appellant contends that the CI's identity should be disclosed. Appellant's Brief at 23. The PCRA court rejected this claim upon finding that it lacked arguable merit. PCRA Court Opinion, 2/4/19, at 8-9. Following our review of the record, we agree.

Whether the identity of a CI who was also an eyewitness shall be disclosed is a matter left to the discretion of the trial court. Rule 573 of the Pennsylvania Rules of Criminal Procedure provides:

* * *

(2) Discretionary With the Court.

> (a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files

---

[4] In a single sentence, Appellant raises a second sufficiency claim in the context of ineffective assistance of Appellate Counsel, and argues that "the Commonwealth failed to prove that Appellant actually or constructively possessed any of the weapons." Appellant's Brief at 20. Aside from this bald assertion, Appellant fails to develop an argument or present pertinent authority that his claim has arguable merit. Accordingly, Appellant's issue is waived. **Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017) ("the failure to properly develop a claim renders an issue waived.").

a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are **material** to the preparation of the defense, and that the request is **reasonable**:

(i) the names and addresses of eyewitnesses[.]

Pa.R.Crim.P. 573(B)(2)(a)(i) (emphasis added). When ruling on such a

request, the trial court must consider the following standards as set forth by

the Supreme Court of Pennsylvania:

> This Court has adopted the guidelines articulated by the United States Supreme Court in **Roviaro v. United States**, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), to guide trial courts in the exercise of their discretion in cases where, as here, the defendant requests the identity of a confidential informant who is also an eyewitness:
>
> > We believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders the nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.
>
> **Commonwealth v. Carter**, 427 Pa. 53, 59, 233 A.2d 284, 287 (1967), (quoting **Roviaro**, at 60–62, 77 S.Ct. 623).
>
> *        *        *
>
> Further, **before an informant's identity may be revealed, the defendant must establish pursuant to Pa.R.Crim.P. 305(B) that the information sought is material to the preparation of the defense and that the request is reasonable.** **Commonwealth v. Roebuck**, 545 Pa. 471, 477, 681 A.2d 1279, 1283 (1996). Only after a showing by the defendant that the information sought is material and the request reasonable is the

trial court called upon to exercise its discretion to determine whether the information is to be revealed.

***Commonwealth v. Bing***, 713 A.2d 56, 58 (Pa. 1998) (emphasis added).

Appellant argues that the trial court erred in its ruling because the identity of the CI was "material" to the preparation of his defense. Appellant asserts:

> This is a case where the informant was an active participant in the offense for which the Appellant stood trial. Therefore, under ***Rovario***, the disclosure and production of the informant should have been required to ensure a fair trial. On the only day the Appellant was seen involved in a drug transaction the informant was an active participant in the transaction. This is not a situation where the informant is a mere tipster who had no real connection to the illegal activity. The informant is the only disinterested person who could contradict the officer's testimony.

Appellant's Brief at 23.

Given the nature of his offenses (PWID and related offenses), we agree with the PCRA court's conclusion that Appellant failed to meet the standards set forth by our Supreme Court. Appellant sought the identity of the CI to corroborate his account of what occurred and to "contradict the officer's testimony." ***Id.*** However, while Appellant appears to be advancing a theory of misidentification, Appellant also concedes that he "was seen involved in a drug transaction the informant was an active participant in[.]" ***Id.*** Appellant does not deny being present at the transaction or having ever met Officer Kuhn. Rather, Appellant merely argues that while he was present at the transaction, he did not intend to deliver a controlled substance to another person. ***Id.*** at 19. Appellant has failed to establish the material need for the

disclosure of the CI's identity. Thus, Appellant's argument in support of counsel's ineffectiveness regarding the disclosure of the CI's identity fails.

Finally, in his third issue, Appellant asserts that he is entitled to relief on the basis of exculpatory after-discovered evidence; specifically, that Officer Kuhn was under criminal investigation for "planting drugs and making false arrests." Appellant's Brief at 24. To be entitled to relief under the PCRA on this basis, the petitioner must plead and prove by a preponderance of the evidence "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). Our Supreme Court summarized:

> To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008) (citations omitted). "The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (citation omitted). Further, when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or

error of law that controlled the outcome of the case. ***Commonwealth v. Reese***, 663 A.2d 206 (Pa. Super. 1995).

Instantly, Appellant is not entitled to relief because this issue was previously litigated and addressed on the merits by this Court in Appellant's direct appeal. ***See*** N.T., 4/2/12, at 104-121; ***Mayfield***, 3315 EDA 2012, at *11-14; ***see also*** 42 Pa.C.S.A. § 9543(a)(3) (to be eligible for post conviction relief, petitioner must plead and prove issue not previously litigated).

An issue has been previously litigated when "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9543(a)(3). On direct appeal, Appellant argued that the trial court abused its discretion by prohibiting him "from presenting testimony at trial showing [his co-defendant's] case had been dismissed without a trial because [Officer Kuhn] had been under investigation, which the defense sought to introduce because it tended to show that [Office Kuhn] had a motive to incriminate [Appellant] and to show a possible bias." ***Mayfield***, 3315 EDA 2012, at * 11-12 (quoting Appellant's Brief at 6-7). Appellant based this claim on a notation in Appellant's co-defendant's docket, which read: "October 15th, 2009, Commonwealth not ready, police officer [failure to appear] pending investigation." ***Id.*** at *13 (quoting N.T., 4/2/12, at 103-04).

This Court rejected Appellant's claim, concluding:

Unfortunately for Appellant, there was insufficient evidence to support defense counsel's speculation as to the reason for Officer Kuhn's testimony. At the time of Appellant's trial, it was undisputed that although the officer had been the subject of both

- 14 -

federal and internal investigations, he had been cleared of any wrongdoing." ***See*** N.T., 4/2/12, at 60.

. . . Appellant conceded that he did not possess any evidence regarding the result of the investigations of Officer Kuhn. . . . As stated by the trial court: "[I]n this case we don't have any finding that [Officer Kuhn] was found even in violation of any police violations [sic], in violation of any laws. We just have the word that you have, 'investigation,' and nothing more." ***Id.*** at 116.

***Mayfield***, 3315 EDA 2012, at *13-14.

Thus, having previously litigated this issue, Appellant is not permitted to resurrect it by asserting a new theory under the guise of after-discovered evidence. ***Commonwealth v. Bond***, 819 A.2d 33, 39 (Pa. 2002) (it is well settled that a PCRA petitioner cannot obtain review of previously litigated claims by presenting new theories of relief).

Even if Appellant's claim of after-discovered evidence had been properly raised for the first time, it would fail because Appellant did not identify testimony, physical evidence, documentation or other matters that would constitute after-discovered evidence such that a trial court has the authority to grant a new trial. The "evidence" that Appellant offers to support his allegations of Officer Kuhn's wrongdoing is unrelated to this case.

Moreover, a defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence "solely to impeach a witness's credibility." ***Commonwealth v. Castro***, 93 A.3d 818, 821 n.7 (Pa. 2014) (citation omitted). Appellant admits that he would use this "evidence" to attack the credibility of Officer Kuhn's testimony. Appellant's Brief at 24 ("The

new evidence would have likely compelled a different verdict and the Appellant was entitled to it for impeachment purposes."). A new trial may not be granted on this basis alone. *Id.* at 827 n.13 (Pa. 2014) (noting that "[e]ven if his impeachment would 'destroy and obliterate' a witness, it is still impeachment[.]").

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/8/20